**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SPANSKI ENTERPRISES, INC.,    ) | |
|    ) | |
|      Plaintiff,    ) | |
|    ) | |
|      v.    ) | Civil Action No. 12-cv-957 (TSC) |
|    ) | |
| TELEWIZJA POLSKA S.A.,    ) | |
|    ) | |
|      Defendant.    ) | |
|    ) | |

**AMENDED MEMORANDUM OPINION SETTING FORTH**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]**

Plaintiff Spanski Enterprises, Inc. ("SEI") sued Defendant Telewizja Polska, S.A.

("TVP") for copyright infringement under 17 U.S.C. §101 *et seq*., alleging that TVP displayed

television show episodes in the United States over which Plaintiff holds exclusive rights.

The court held a five-day bench trial from February 22, 2016 through February 26, 2016,

and the parties filed post-trial briefs on April 1, 2016.

Based upon the evidence presented at trial, and having reviewed the parties' submissions,

the court makes the findings of fact and conclusions of law set forth below.  Based on these

findings of fact and conclusions of law, the court concludes that Plaintiff has sustained its burden

of proof on its copyright claim, and that judgment must therefore be entered in favor of SEI.

Specifically, the court finds that Plaintiff has carried its burden of establishing by a

preponderance of the evidence that: (1) SEI was the exclusive licensee and owner of valid

copyrights over 51 TVP Polonia episodes discussed herein; (2) TVP infringed SEI's exclusive

---

[1] This opinion was amended on December 12, 2016 only to remove an extraneous superscript that contained no
corresponding footnote.

copyright on the 51 shows by making them available in the U.S. via the website www.tvp.pl from the period of December 2011 to March 1, 2012; (3) TVP's infringement was volitional and intentional, and not due to a failure of its geoblocking system or an effort at circumventing geoblocking by SEI; and (4) Defendant did not carry its burden of establishing by a preponderance of the evidence that SEI should be equitably estopped from bringing this claim.

## I.   FINDINGS OF FACT

### A.  Whether Plaintiff held valid copyrights for TVP Polonia episodes

Three witnesses testified about the facts and circumstances surrounding SEI's claim that it held an exclusive copyright for TVP Polonia programming in the United States: (i) SEI President Boguslaw Spanski; (ii) former Loeb & Loeb attorney Michael Barnett; and (iii) former Loeb & Loeb paralegal Christian Jensen.  The court finds that all three witnesses testified credibly regarding Plaintiff's copyright.

The court makes the following findings of fact regarding whether SEI held a copyright for TVP Polonia episodes in the United States:

1. TVP is Poland's national public television broadcasting company and is owned by the Polish Treasury.  (Tr. 280:22-23).

2. TVP owns and operates twelve national and sixteen regional Polish-language television channels, including the channel TVP Polonia. (Stipulated Facts ¶ 3; Tr. 280:21–281:7).

3. TVP distributes TVP Polonia content, as well as content from TVP's other channels, through its www.tvp.pl website (or "TVP website") in Poland, some of which is free and some of which is offered on a pay-per-view basis.  (Tr. 283:22–284:11).

4. TVP creates all TVP Polonia content, and while it owns a copyright in the material it created, TVP licenses some of its material to other distributors. (PX 1, § 2; Tr. 282:5-10, 283:4-11).

5. SEI is a Canadian corporation which, together with its subsidiaries and affiliated companies, distributes Polish-language television and radio

content in North and South America via satellite, cable television, and the
internet.  (Stipulated Facts ¶ 1).

6.  On December 14, 1994, TVP and SEI entered into an agreement in which
    TVP granted SEI the exclusive right to one-time use of TVP Polonia (then
    called "TV Polonia") shows in its programming in North and South
    America (the "Territory").  (PX 1, § 2).

7.  TVP and SEI executed an Addendum to the 1994 Agreement in 1999,
    giving SEI the exclusive right to use—e.g., distribute, broadcast, and
    display—TVP Polonia content over the internet within the Territory.  (PX
    2, § 1).

8.  SEI and TVP engaged in discussions involving geoblocking content as
    early as 2000.  (PX 44; Tr. 26:4-16).

    a.  Geoblocking is a method to prevent user access to a network,
        based on the geographic location of that user.  (DX 7 at 6)

9.  Beginning in 2007, TVP and SEI engaged in litigation in the Southern
    District of New York, which resulted in a 2009 Settlement Agreement
    specifying that SEI is the exclusive licensee of TVP Polonia, including its
    copyrighted content, in the Territory.  SEI therefore has the exclusive right
    to distribute, broadcast, perform, and display TVP Polonia content,
    including over the internet and mobile devices, in the United States.  (PX
    10§ II.A-B; *see also* Tr. of Motions Hearing, dated July 9, 2015 [ECF No.
    33] at 73:15-18; DX 9; Tr. 46:19-25–47:4).

10. TVP Polonia's individual episodes are all foreign works. (Tr. 20:25-21:9;
    Tr. 283:4-11).

11. SEI registered 51 separate individual TVP Polonia episodes for copyright
    in 2012.  (PX 34, 35, 36).

    a.  Between January 18, 2012 and February 14, 2012, SEI, through
        then Loeb & Loeb attorney Michael Barnett and then Loeb & Loeb
        paralegal Christian Jensen, filed pre-registration applications with
        the U.S. copyright office for 51 TVP Polonia episodes.  (PX 34,
        49).

    b.  SEI pre-registered these episodes prior to having any knowledge
        that they were available in the United States on TVP's website.
        (Tr. 202:9-25).

    c.  The 51episodes are *Galeria* episodes 4 – 25, *Gleboka woda*
        episode 13, *M jak Milosc* episodes 884 – 895, *Plebania* episodes

3

            1825 – 1829, and *Rezydencja* episodes 48 – 58.  (Stipulated Facts para 15; PX 34).

    d. Between February 8, 2012 and March 8, 2012, SEI registered the 51 episodes with the U.S. Copyright Office.  (PX 34 and 35).

    e. Between February 13, 2012 and March 13, 2012, the U.S. Copyright Office issued copyright registration certificates for the 51 Episodes.  (PX 35).

    f. The original copyright registrations were made under the name "Euro Vu, S.A.," and on May 31, 2012, the U.S. Copyright Office issued supplemental registrations changing the copyright claimant name for the 51 episodes from "Euro Vu, S.A." to "Spanski Enterprises, Inc."  (PX 36).  Euro Vu, S.A. is a subsidiary of SEI. (Compl. ¶ 17).

12. As part of the copyright process, Christian Jensen made recordings in the U.S. of 36 of the 51 episodes for the purpose of having deposit copies. The 36 episodes are *Galeria* episodes Nos. 4-14; *M jak Milosc* episodes Nos. 884-894; *Plebania* episodes Nos. 1825-1829; and *Rezydencja* episodes Nos. 48-56.  (PX 38, Tr. 223:18-228:19).  The remaining 15 episodes of the 51 were filmed outside of the U.S. for deposit copy purposes.  (Tr. 190:8-17; PX 38, 45).

**B. TVPs geoblocking capability**

Three witnesses testified about the facts and circumstances surrounding TVP's geoblocking capability: (i) TVP Deputy Director for Informatics or Computer Technology in the department of TVP technology Jacek Terlicki; (ii) TVP expert witness Dr. Phillip Hallam-Baker; and (iii) SEI expert witness Dr. Matthew Edman.  The court finds the testimony of Terlicki on the subject of whether there was a failure of geoblocking to have been severely undermined by other credible testimony and evidence.  Similarly, as set forth in more detail below, the court finds that much of Dr. Hallam-Baker's testimony was not supported by the evidence, and that on cross-examination, he was unable to provide credible explanations for many of his conclusions.

The court makes the following findings of fact regarding TVP's geoblocking capability:

1. TVP uses an online video-on-demand ("VOD") system to make programming available to the public through the internet.  (Tr. 283:22-24).

Individuals access content by entering the web portal at www.tvp.pl, then selecting an episode from a list of programming.  (Tr. 284:3-11).

2.  The VOD function works through an online distribution system that has four main components: (a) the Workflow System, which accepts video content in various source formats and converts those formats to the formats required for online distribution; (b) the Content Management System ("CMS"), which allows descriptive information to be added to material loaded to the Workflow System; (c) the Web Portal Engine ("Portal Engine"), which creates the internet user's website viewing experience (except for the video content, which is separately handled) from information supplied by the CMS system, and (d) the Content Delivery Network, which delivers the video content to internet users.  (DX 7 at 4-5).

3.  First, the workflow system receives the actual video of TVP programming that will be displayed online.  Audio/visual ("AV") technicians receive the video of an episode from the production department, and then convert it into video formats which can be viewed from computers, smart phones, or other devices that can access the internet.  (DX 7 at 4-6).

   a.  When AV technicians receive a new program to load into the workflow system, the technicians create a file with a basic format that is used as a template from which other formatted files are created.  (Tr. 290: 2-9).

   b.  At times, TVP programming is released through the VOD system first as a pay-per-view episode, before it is broadcast to the general public.  (Tr. 284:12-23).

   c.  Each episode receives a format in the workflow system.  If the episode is first released on a pay-per-view basis, it receives one format, and then after the episode has been broadcast and is available for free viewing, it is given a second format.  (Tr. 290:2-291:1, 421:17-21).

   d.  As technology evolved, and demand for higher quality video grew, TVP modified formats in the workflow system to be MP4 formats, a type of video formatting that allows video to be streamed on a smartphone.  TVP AV technicians were engaged in changing episode formats in the workflow system to MP4 during the period of alleged infringement at issue.  (Tr. 290:17-291:1, DX 3, 26).

   e.  Modifications to formats in the workflow system are retained by TVP for an extended period of time, and TVP was able, after the initiation of this litigation, to print out and save workflow logs

from the infringing period.  (Tr. 317:18-23, 318:12-17, 340:5–350:4).

    i.  TVP argues that the workflow system logs displayed in DX 5 show that no modifications were made to the geographic restrictions in workflow, but, as Plaintiff points out, DX 5 is incomplete.  (*Compare* DX 3 at TVP-Internet 066222 which shows the deletion of format number 342670 for Episode 9 of *Galeria*, *with* DX 5 at TVP-internet 000078, which shows the creation and distribution of format number 342670 for Episode 9 of *Galeria*, but not its deletion).

  f.  While the court finds that TVP actively engaged in changing video formats over the infringing period, as discussed below, re-formatting to MP4 was not the reason why multiple formats for the same episode, some containing a minus "minus ameryki" (minus America) restriction—e.g., the episode was geoblocked from being shown in the Territory—and some not, were created.  Rather, the court finds by a preponderance of the evidence that the reason was to intentionally make the programming available in the U.S.  (PX 57, Tr. 438:5-440:24).

4.  The second part of the system is the CMS.  Program editors receive information such as schedules, show descriptions, plot summaries, etc., and enter this information into CMS.  Program editors also enter a "digitization card" for each episode of a show, which is a set of instructions for the AV technicians who operate the workflow system.  The digitization card contains any territorial restrictions applicable to the episode, such as minus America.  (Tr. 288:3-289:6).

  a.  The CMS system's default setting is minus ameryki, which blocks access to the VOD system from IP addresses associated with any country in the Territory.  (Tr. 299:2-23, 514:1-3).

  b.  In order for the default of minus ameryki to be removed in the CMS, a program editor must take the volitional step of selecting a different setting from a drop-down menu.  (Tr. 299:12–300:4, 514:10-21).

  c.  CMS also logs entries in its system, similar to the workflow system, but CMS logs are saved only for one month, then overwritten.  Thus, no logs from the infringing period were saved.  (Tr. 315:22-25, 316:14–317:17, 500:6–501:14, 513:3-16).

    d.   Workflow entries for territorial restrictions could also be seen by the program editors, but they could not edit the information.  (Tr. 291:9-19).

5.   The third part of the system is the portal engine, which takes information entered into CMS, and displays it on a webpage that can be read in a user's web browser. In addition to providing all of the visual and text elements of the TVP website, except for the actual video of the episode, the portal engine also provides the interface for a user to log in and access VOD, as well as make payments if the video is pay-per-view.  (Tr. 292:19–293:20).

    a.   The portal engine also logs the IP addresses of users who request to view VOD materials through the TVP website, and whether access to the programming was blocked because it came from an area that is geo-blocked.  However, during the infringing period, this information was automatically overwritten after 14 days, and was therefore not available.  (Tr. 311:1-13, 312:5–314:24, DX 1, 2).

    b.   The portal engine interfaces with TVP's external payment system, which accepts credit card payment for pay-per-view access.  The portal engine logs this information, and during the infringing period, according to logs provided by the Defendant, did not show any IP addresses located in either North or South America.  (DX 24).  However, entries 1466 through 4198 show IP addresses that have no listed country of origin.  (*Id.*).

6.   The fourth part of the system is the Content Delivery Network, which delivers the video content that is pushed from the workflow system, and displays it on a user's screen.  (Tr. 293:21–294:1, 305:1-24).

7.   Devices such as computers and smartphones have unique IP addresses that show where they are located, and, when they access the internet, allow content to reach the device.  (Tr. 558:14-22, 560:2–561:17).

8.   Geoblocking is used to prevent user access to a network, based on the geographic location of that user.  (DX 7 at 6).

    a.   In VOD systems, such as TVP's, the video content is stored on servers and delivered in response to a request for access. Geoblocking works by comparing the IP address of the user requesting access with a third party database.  If the programming is designated to be blocked in the geographic region where the IP address of a requesting device originates, then access is denied. (Tr. 284:3-11, 295:21–296:4, 602:2-10).

b. Geoblocking is an automated process, and as such, can have inherent flaws.  TVP uses the MaxMind database for its geoblocking system, which is at least 98% accurate in blocking IP addresses on a country level.  (Tr. 636:15-638:19, 694:14-17, DX 7 a 7).

    i. While the court agrees that geoblocking is not a perfect system, and thus is never 100% accurate, the court, as discussed below, does not find that a malfunction of the MaxMind database caused SEI's copyrighted TVP Polonia episodes to be accessible in the Territory via TVP's website.

9. TVP has a geoblocking system built into its VOD system, which in 2007 was activated to block access from the Territory, based on an agreement with SEI.  (Tr. 295:12-20, 296:5–297: 17).  This territorial restriction was in place during the infringing period.  (*Id.*).

10. During the infringing period, the CMS and workflow systems had a default territorial restriction of minus ameryki.  (Tr. 299:2-11).

11. On the workflow system half of the VOD architecture, territorial restrictions were emplaced by adding an access channel at the format level, which was defined by the type of device (for example, mobile phone) and the location (minus ameryki).  An AV technician would create an access channel for each format based on the territorial restriction in the digitization card generated in CMS.  Then the AV technician would distribute the format with the territorial restriction.  (Tr. 302:22–303:7, 303:24–304:20).

12. Since minus ameryki was the default setting in the CMS system, even if a TVP employee did not enter a territorial restriction into the workflow system, access to the VOD by an IP address in the U.S. would be automatically denied unless the territorial restriction in CMS was also removed.  (Tr. 344:2-14, 602:20–603:9, 604:4-16, DX 7 at 5-6).

a. Since the default setting in CMS was minus ameryki, a program editor would have to select a different setting from a dropdown menu to change the geo-block setting in CMS.  (Tr. 299:7–300:23).

b. Thus, for an IP address in the Territory to gain access to TVP's VOD, there would either have to be a failure of the geoblocking system, or a volitional step by a TVP employee to give access.

13. TVP has used geoblocking for various other non-TVP Polonia content on its website, including broadcasts of the Olympics and World Cup.  (Tr. 295:12-17, 297:3-8, 307:4-9, 617:2-9, DX 7 at 8).

14. No organization other than SEI reported that TVP's geoblocking system did not work.  (Tr. 306:23–308:5, 617:2–618:11, DX 7 at 8).

15. TVP continually checks the functioning of its geoblocking, and from 2007 to 2012, tested its effectiveness and found it was functioning.  (Tr. 301:12–302:7).

**C.  Whether Defendant infringed Plaintiff's copyrights**

Five witnesses testified about the facts and circumstances surrounding SEI's claim that TVP infringed its exclusive copyright over TVP Polonia programming: (i) Michael Barnett; (ii) Christian Jensen; (iii) Jacek Terlicki; (iv) Loeb & Loeb network operations manager Courtney Spence; and (v) Tomasz Gladkowski, a contractor who provided website development and monitoring services to Plaintiff (Gladkowski was deceased at the time of trial, but his deposition testimony was presented).  The court finds that Barnett, Jensen, Spence and Gladkowski testified credibly.  The court finds Terlicki's testimony to have been credible in some respects, but also finds some aspects of it to have been less than credible and contradicted by other, more reliable testimony and evidence.  Moreover, the court notes that Barnett, Jensen, and Gladkowski were tasked with checking and reporting on whether TVP programming was available without charge on the TVP website, and finds that while they may not have had specific recollections of viewing each individual episode, their testimony, taken together, was sufficient to show that the registered episodes were available for viewing and viewed in the U.S.

The court makes the following findings of fact regarding whether TVP infringed SEI's copyright in the United States:

1. SEI held a valid copyright for 51 episodes of TVP Polonia.  (PX 35, 36).

2. As part of the copyright process, Christian Jensen made recordings in the U.S. of 36 of the 51 episodes for the purpose of having deposit copies.  He did so

by going to the TVP website and accessing the recordings.  None of these episodes should have been available in the U.S. under the geoblocking agreements between TVP and SEI.  The 36 episodes are *Galeria* episodes Nos. 4-14; *M jak Milosc* episodes Nos. 884-894; *Plebania* episodes Nos. 1825-1829; and *Rezydencja* episodes Nos. 48-56.  (PX 34, 38, Tr. at 223:18-228:19).

    a.   Michael Barnett also viewed TVP episodes through TVP's website in the U.S. at the Loeb & Loeb office in Manhattan, and at his home in Brooklyn, New York.  While Barnett could not testify as to which specific episodes of the 51 he viewed, his general recollection adds credence to Jensen's recordings and testimony. (Tr. 168:18-22; 172:15-21, 197:18-198:16).

       i.   Barnett testified that he was able to click on videos on TVP's website, and they were available to view without charge.  He then watched portions of multiple TVP serial show episodes.  (Tr. 169:10–170:18; 171:13-20).

      ii.   Barnett was able to capture screenshots of six of the fifteen registered episodes that were not recorded by Jensen.  (PX 40 at SEI-INTERNET 0000273).

    b.   Tomasz Gladkowski testified that he was able to access TVP content, including the registered episodes, in Canada between December 2011 and March 2012, and that he checked the website almost daily during that period.  (Gladkowski Dep.  22:9-24). Because TVP's geoblocking system set North and South America as a restriction, programming that would be blocked in the U.S. would also be blocked in Canada, and programming available in Canada would also be available in the U.S.  (Tr. 299:12-16, 603:1-15).

    c.   The testimony of Barnett, Jensen, and Gladkowski established that TVP content was available in the U.S. free of charge and viewed on the internet from December 2011 to March 2012.

3.   The court credits the testimony of the SEI witnesses that they did not attempt to circumvent TVP's geoblocking when they viewed the copyrighted shows in North America, and there was no evidence to indicate that such attempts were made.

    a.   Both Barnett and Jensen testified that when they viewed the TVP serial shows in the United States, they did so from the Loeb & Loeb offices, and at home, and did not use a proxy server or virtual private network which could trick geoblocking technology.

       i.   Barnett stated he did not use either technology.  (Tr. 171:9–172:14; 180:21–181:2, 190:8–191:2, 214:11-22)

     ii.   Barnett stated that he did not order Mr. Jensen to use any geoblock evading technology.  (190:22-25).

   iii.   Jensen stated he did not use geoblock evading technology.  (Tr. 223:21–224:16, 227:8–228:19, 242:19-23).

   iv.   Gladkowski stated he did not use geoblock evading technology.  (Gladkowski Dep. 16:6-9).

    v.   Defendant's expert witness Dr. Hallam-Baker admitted that TVP had no evidence that Barnett or Jensen had used geoblock evading technology.  (Tr. at 653:11-17).

b.   The fact that Barnett and Jensen did not record web session information, such as the IP address of the computer they used to access the 36 serial shows, does not undermine their testimony. Neither Jensen nor Barnett are IT professionals or investigators.

c.   Courtney Spence testified that Loeb & Loeb has software that precludes the use of proxy tricking software, and he confirmed that any internet traffic from the law firm's New York office, where Jensen recorded the 36 serial shows, would be directed through a dedicated circuit located in the U.S., not overseas.  (Tr. 769-771, PX 67).

d.   Barnett (Tr. 171:3-8) and Gladkowski (Dep. 15:3-16:5, 44:8-45:14) testified that some episodes were blocked, while others were not, which showed that they were not using geoblock evading tools.  Additionally, on March 1, 2012, neither Barnett nor Jensen could access any more shows without charge.  (Tr. 187:21–188:16, 230:11–231:6).  Had they been using geoblock evading technology, they would have been able to continue accessing TVP Polonia episodes.

4.   The court therefore finds that Plaintiff established by a preponderance of the evidence that the 51 episodes copyrighted by SEI were available and viewed in the U.S. via TVP's website.

a.   Jensen viewed the 36 shows he preregistered in the U.S. over the TVP website, and did not view the 15 that were recorded overseas.  (Tr. 230:11-19, 240:23–241:12, 276:11-14)

b.   Barnett testified he was able to view the 51 TVP Polonia shows in the United States, although he could not recall the specific

episodes he viewed, and did not create a contemporaneous list. (Tr. 197:23–200:21, 203:16–204:16).  He also testified that he did not have a specific recollection of watching all 51 episodes, but that he "certainly watched a lot of episodes and confirmed that they were streaming." (Tr. 200:12-21).  Gladkowski also testified that he believed that he was able to access all of the registered episodes during the relevant period.   (Dep. 33:17-18)

    c.  Barnett made screenshots of 6 of the 15 episodes displayed in PX 40—Bates number SEI-INTERNET 0000273 (Galeria eps. 16), 287 (Galeria eps. 18), 295 (Galeria eps. 17), 296 (Galeria eps. 19), 297 (Galeria eps. 20), 351 (Rezydencja eps. 58).

    d.   The court concludes that Barnett's, Gladkowski's, and Jensen's testimony established by a preponderance of the evidence that all 51 registered episodes were in fact available and viewed on the TVP website for free, and Plaintiff's rights in all 51 were therefore infringed.

5.  The period of infringement was from December 2011 to March 2012.  (Tr. 167:13; 187:21-25).

    a.  On March 1, 2012, Barnett and Jensen could no longer view TVP Polonia programming through TVP's website.  (Tr. 187:21–188:16, 230:11–231:6).

## D.  Whether Defendant's infringement was volitional and willful

Six witnesses testified about the facts and circumstances surrounding SEI's claim that TVP infringed its exclusive copyright over TVP Polonia programming in the United States: (i) Michael Barnett; (ii) Christian Jensen; (iii) Jacek Terlicki; (iv) Courtney Spence; (v) Dr. Phillip Hallam-Baker; and (vi) Dr. Matthew Edman.  The court found the testimony of Dr. Hallam-Baker to be unhelpful in determining whether the infringement was volitional and willful.  Dr. Hallam-Baker did not speak with TVP employees Tomporowski or Jezewski, (Tr. 667:11-12; 674:11-16), and only speculated about "hypothetical" reasons why TVP's geoblocking technology might not have worked.  (Tr. 620:20-22).  His answers on cross-examination demonstrated that he did not have a complete understanding of TVP's geoblocking system, and he appeared to have done little or no independent research.  Moreover, despite his testimony that

geoblocking failure could have been caused by a failure of the Mongo database (Tr. 628:8-11),

Dr. Hallam-Baker admitted that there was no evidence of such a system failure (Tr. 697:11-22),

and that such a scenario was only a "hypothetical" explanation.  (Tr. 626:20-22).  Similarly, Dr.

Hallam-Baker's testimony that a geoblocking failure could have occurred from a flaw in the

MaxMind database of IP addresses was mere speculation, since there was no evidence presented

of such a flaw, and Dr. Hallam-Baker conceded that the MaxMind database is 99.8% accurate on

a country basis.  (DX 7 at 7).

 The court makes the following findings of fact regarding whether TVP willfully and

volitionally infringed Plaintiff's copyrights:

1. TVP acted volitionally in infringing SEI's copyright.  As noted in the court's findings above regarding TVP's geoblocking technology:

    a. AV technicians manually input regional restrictions into the formats for each episode in the workflow system.  (Tr. 302:22–303:7, 303:24–304:20).

    b. The CMS system is set to a default of minus ameryki, and in order for the default to be removed, a program editor must select a different setting from a drop-down menu.  (Tr. 299:12–00:4, 514:10-21).

    c. TVP program editors working on the CMS would be able to see any changes to territorial restrictions that were made in the workflow system.  (Tr. 291:9-19).

    d. In order to make TVP Polonia programming accessible in North America, TVP personnel working on the workflow system and CMS would have to take specific actions.

    e. Since the court finds that the SEI witnesses did actually view TVP Polonia content in the U.S., it also finds that TVP employees took the required volitional actions to remove territorial restrictions.

2. TVP acted willfully and intentionally to infringe SEI's copyright.

    a. The person in charge of TVP's geoblocking system, Jacek Terlicki, denied that multiple formats of episodes—one geoblocked, the other not geoblocked—were created.  Having two formats would enable the territorial

restrictions on shows to be changed without having to remove the show from distribution.  (Tr. 418:11–419:9).

b. However, contrary to Terlicki's assertions on the witness stand, screenshots of the TVP workflow system show that multiple formats were made for episodes, and these formats included one with a minus ameryki territorial restriction, and one without a territorial restriction.  (PX 55, 56, 60, 63, 64).

i. The workflow screen shots at issue are for episode 894 of *M jak Milosc*, episode 4 of *Galeria*, episode 52 of *Rezydencja*, episode 878 of *M jak Milosc*, episode 1810 of *Plebania*, episode 1829 of *Plebania,* episode 10 of *Galeria*, episode 11 of *Galeria*, and episode 21 of *Galeria*.

ii. PX 57, which is a copy of DX 5, is a workflow activity log from the infringing period, and shows multiple formats created for a number of TVP Polonia episodes in the workflow system.

iii. PX 58 shows that 46 of the 51 episodes which SEI copyrighted had multiple formats created.

c. The creation of multiple formats for SEI copyrighted demonstrates that the infringement was intentional and willful, since creating a format is an intentional act, and there was no evidence that a format could be created accidentally.

d. Further, TVP employees acted intentionally to delete the multiple formats.

i. PX 58 shows that for the 46 copyrighted episodes which had multiple formats, all of the non-geoblocked formats were deleted.

ii. In particular, on February 25, 2012, TVP AV technician Mariusz Tomporowski deleted/removed (in Polish, "usuniety") 27 formats which had no territorial restriction.  These 27 deletions, all of which were done sequentially, were done only for episodes which SEI had preregistered.  (PX 57, 58).

iii. The deletions do not appear to have been done by mistake or accident.  (Tr. 440:9-24).

iv. The deletions were not a coincidence, nor did they occur merely because TVP was replacing old material, as TVP witnesses Terlicki and Hallam-Baker speculated.  (Tr. 436:2-11, 749:6-24).

v. Further, in the case of an unregistered episode, episode 874 of *M jak Milosc* (which had two formats created), TVP personnel did not delete

the alternative format that was withdrawn.  Only registered episodes had alternative formats deleted.  (PX 57, 58, 59, Tr. 436:14–437:18).

vi.   The deletions occurred weeks after the formats were withdrawn and prior to distribution of new formats, indicating that the deletions were not done in order to distribute these episodes in updated formats, such as MP4.  (PX 57, Tr. 438:5–440:24).

vii.   The odds that, of all of TVP's shows, 27 registered episodes were deleted in sequence on the same day were estimated by two witnesses to be "substantially more than a billion to one, and less than one in a quintillion."  (Tr. 672:16–673:18, 812:13–813:5).

e.   The evidence also shows intentional manipulation of workflow logs prior to TVP taking screenshots being taken of them for purposes of this litigation.

i.   On August 31, 2012, AV technician Przemyslaw Jezewski removed formats from distribution, changed the workflow settings, and then republished the formats in distribution just prior to taking a screenshot of the workflow format screens for use in this litigation.  (*Compare* PX 57 at TVP-Internet 00091 which shows that on August 31, 2012 from 2:49 to 2:50 p.m., Jezewski removed format number 340770 (episode 895 of *M jak Milosc*) from distribution, then manipulated its settings in the Workflow system, and re-published the format in distribution, *with* DX 3 at TVP-Internet 000065 (Workflow screenshot for format number 340770 (episode 895 of *M jak Milosc*), printed on August 31, 2012 at 2:52 p.m.).

ii.   Other examples of this conduct include:

- *Compare* PX 57 TVP-Internet 00090-91 (on August 31, 2012 from 2:47 to 2:48 p.m., Jezewski removed format number 340776 (episode 894 of *M jak Milosc*) from distribution, manipulated its settings in the Workflow system, and re-published the format in distribution) *with* DX 3 at TVP-Internet 000064 (Workflow screenshot for format number 340776 (episode 895 of *M jak Milosc*), printed on August 31, 2012 at 2:48 p.m.);
- *Compare also* PX 57 at TVP-Internet 00094 (on August 31, 2012 at 2:55 p.m., Jezewski removed format number 332756 (episode 1828 of *Plebania*) from distribution, manipulated its settings in the Workflow system, and re-published the format in distribution) *with* DX 3 at TVP- Internet 000069 (Workflow screenshot for format number 332756 (episode 1828 of *Plebania*) printed on August 31, 2012 at 2:55 p.m.).

iii. The method of changing these formats—removing one episode from distribution, manipulating the format, and republishing it—is the method used to change the territorial restriction for a format. (Tr. 464:16-19).

iv. These formats were not removed from distribution for the purpose of changing the publication end date, they were removed because Defendant's employee, Jezewski, altered the territorial restrictions to geoblock them. (DX 3 at TVP-Internet 066279, 066282).

f. As noted above, CMS system records are overwritten, so any changes during the infringing period would not have been captured when this litigation commenced. The CMS records that were produced were printed on August 31, 2012, which is the same day Jezewski removed formats in the workflow system, then republished them prior to screenshots being taken. (DX 4). The court did not find Defendant's exhibits dealing with the CMS system and purporting to show geoblocked content to be helpful or credible.

3. There is no evidence that a failure in TVP's geoblocking system caused the infringement.

a. Jacek Terlicki testified that he had not heard of any problems with the geoblocking system, and was "absolutely certain the system was working with one hundred percent reliability." (Tr. 309:8-12).

b. Dr. Hallam-Baker speculated about several possible flaws or malfunctions that could have led to an inadvertent failure in geoblocking, but, as noted above, the court did not find his testimony on this issue to be useful or credible. Moreover, Dr. Hallam-Baker testified that:

i. He was unaware of any technological failure in TVP's geoblocking system that would have allowed TVP Polonia shows to be accessed in the U.S. via TVP's website. (Tr. 697:11-22).

ii. He had no information that a replication failure in the Mongo database led to a geoblocking failure, but suggested this as a "hypothetical" explanation. (Tr. 626: 20-22).

iii. The MaxMind database is between 98 and 99.8% accurate in blocking access on a country basis, and he had no information to suggest that there was a database flaw leading to TVP Polonia shows being available on the TVP website in the U.S. (DX 7 at 7; Tr. 694:14-17).

c. Dr. Erdman testified that had a database failure occurred, TVP IT administrators would have noticed it. (Tr. 807).

d. PX 37, screenshots taken by Gladkowski over the infringing period, show that some TVP shows were geoblocked, while others were not, lending further credence to the assertion that TVP employees selectively removed the geoblock for some shows, instead of there being a mass failure of the system. (PX 37).

**E. Defendant's equitable estoppel defense**

The court finds that the evidence did not support Defendant's equitable estoppel defense, and makes the following findings of fact regarding whether SEI is equitably estopped from pursuing its copyright infringement claims:

1. TVP employees were aware that they infringed SEI's copyrights. As set forth above, since the default settings for programs were to geoblock TVP Polonia content from being accessible in the U.S., TVP employees had to take willful and volitional steps to remove the geo-block for the 36 episodes that were viewed and recorded in the U.S. by Jensen. (Tr. 344:2-14, 602:20–603:9, 604:4-16, DX 7 at 5-6).

2. Further, a TVP employee took the deliberate step of deleting formats that did not contain the minus ameryki restriction prior to taking screen shots of the workflow system. (*Compare* PX 57 at TVP-Internet 00091 *with* DX 3 at TVP-Internet 000065).

3. No evidence was presented to show that SEI had advance knowledge that its copyrights were being infringed; rather, the evidence shows that SEI discovered the infringement after TVP employees removed the territorial restrictions, and after discovering this, SEI acted to register the 36 shows in the U.S. (Tr. 202:9-203:1).

## II.   CONCLUSIONS OF LAW

### A.  Copyright Infringement Generally

1. "In order to prevail in a copyright infringement action, a plaintiff must show two elements: First, that he is the rightful owner of the copyright at issue, and second, that the defendant infringed his copyright." *Staggers v. Real Authentic Sound*, 77 F. Supp. 2d 57, 61 (D.D.C. 1999) (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991)).

2. The plaintiff bears the burden of proving that any infringement of its copyrights occurred. *See Petrella v. Metro-Goldwyn-Mayer, Inc*., 134 S. Ct. 1962, 1976 (2014).

### B.  Whether Plaintiff Possessed A Valid Copyright Over TVP Polonia Programming In The US

1. Plaintiff has met its burden of establishing that it possesses a valid copyright over TVP Polonia programming in the U.S.

2. Defendant is the creator of TVP Polonia programming, and thus originally held all rights over its use.

    a. "An author holds a bundle of exclusive rights in the copyrighted work." *Stewart v. Abend*, 495 U.S. 207, 220 (1990).

    b. The bundle of rights "is entirely statutory and is set forth in 17 U.S.C. § 106." *Staggers*, 77 F. Supp. 2d at 60–61 (citing *Sony Corp. of America v. Universal City Studios, Inc*., 464 U.S. 417 (1984)).

    c. TVP, as the originator and owner of TVP Polonia programing, had the right to license its exclusive rights to another party. 17 U.S.C. § 201(d).

3. SEI is the exclusive licensee of TVP's rights in TVP Polonia. SEI therefore has the exclusive license to broadcast TVP Polonia programming in the U.S. This legal conclusion is not in dispute.

    a. Under 17 U.S.C. § 204(a), in order to validly transfer of copyright ownership, a transfer of exclusive rights must be in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent. *Atkins v. Fischer*, 331 F.3d 988, 991 (D.C. Cir. 2003).

    b. SEI and TVP executed multiple written agreements—the December 14, 1994 agreement and the 199 Addendum to the 1994 Agreement—which give SEI the exclusive right to "use" TVP Polonia content over the internet within the U.S.

4. Since TVP validly transferred copyright ownership to SEI, SEI is the exclusive owner of any copyrights over TVP Polonia programming in the U.S. 17 U.S.C. § 101; *see also* William Patry, 2 Patry on Copyright § 5:101 (2016).

5. TVP Polonia programming are foreign works, and "holders of copyrights for foreign works need not register those works in order to bring a suit for copyright infringement. Registration is only a prerequisite when the foreign copyright holder seeks statutory damages and attorney's fees." *Rudnicki v. WPNA 1490 AM*, 580 F. Supp. 2d 690, 694 (N.D. Ill. 2008). Thus SEI was not required to register its copyright of TVP Polonia programming in the U.S.

6. However, SEI registered 51 episodes of TVP Polonia with the Copyright Office. Copyright registration certificates are *prima facie* evidence of a valid copyright. 17 U.S.C. § 410(c); *see also Stenograph L.L.C. v. Bossard Associates, Inc.,* 144 F.3d 96, 99 (D.C. Cir. 1998) ("Stenograph's certificates of registration for Premier Power . . . constitute *prima facie* evidence of the validity of the copyright of the software, and [defendant] makes no argument that such certificates were improvidently issued); *MOB Music Pub. v. Zanzibar on the Waterfront, LLC*, 698

F. Supp. 2d 197, 202 (D.D.C. 2010) ("[C]opyright registration certificates constitute prima facie evidence of plaintiffs' valid copyrights . . .").

    a. The 51 registered episodes are *Galeria* episodes 4 – 25, *Gleboka woda* episode 13, *M jak Milosc* episodes 884 – 895, *Plebania* episodes 1825 – 1829, and *Rezydencja* episodes 48 – 58.

7. Thus, SEI is the valid holder of copyrights for all TVP Polonia programming in the U.S., including the 51 registered episodes.

## C. Whether TVP Infringed SEI's Public Performance Right[2]

1. SEI has met its burden to prove that its public performance right was infringed by TVP for all 51 episodes of TVP Polonia programming.

2. SEI holds the exclusive right to "perform the copyrighted work publicly."  17 U.S.C. § 106(4).  SEI's public performance right includes the exclusive right to transmit TVP Polonia shows to viewers in the U.S.  17 U.S.C. § 101.

    a. Under 17 U.S.C. § 101, "[t]o 'perform' a work means to recite, render, play, dance, or act it, either directly or by means of any device or process or, in the case of a motion picture or other audiovisual work, to show its images in any sequence or to make the sounds accompanying it audible. To 'transmit' a performance is to communicate [a work] by any device or process whereby images or sounds are received beyond the place from which they are sent. To perform a work 'publicly' is to transmit or otherwise communicate a performance or display of the work to . . . the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times [the 'Transmit Clause']."  *Fox Broad. Co.*, 160 F. Supp. 3d at 1158 (internal citations omitted).

    b. The Transmit Clause defines the public performance right as the right to "transmit a performance to the public 'whether the members of the public capable of receiving the performance ... receive it ... at the same time or at different times.'"  *Am. Broad. Companies, Inc. v. Aereo, Inc*., 134 S. Ct. 2498, 2509 (2014) (citing 17 U.S.C. § 101).

3. "For the Transmit Clause to apply, there must be (1) a transmission or other communication; (2) of a performance of a work; (3) to the public.  Not all transmissions are performances, and not all performances are transmissions."  *Fox Broad. Co.*, 160 F. Supp. 3d at 1158 (internal citation omitted).

---

[2] Plaintiff does not appear to allege an infringement of its distribution rights.

4. Both parties agree that unauthorized streaming of copyrighted content can constitute a violation of the public performance right.  (Def.'s Trial Brief at 4; Pl.'s Trial Brief at 5).  *See Aereo,* 134 S. Ct. at 2506-2507 (Provider that sold subscribers broadcast television programming streamed over the Internet from small antennas housed in a central warehouse "performed" copyrighted works within the meaning of the Copyright Act.  Although the provider's system remained inert until a subscriber indicated that he or she wanted to watch a program and may have emulated equipment a viewer could use at home, it allowed subscribers to watch programs almost as they were being broadcast); *United States v. Am. Soc. of Composers, Authors, Publishers*, 627 F.3d 64, 74 (2d Cir. 2010) ("The Internet Companies' stream transmissions, which all parties agree constitute public performances, illustrate why a download is not a public performance.  A stream is an electronic transmission that renders the musical work audible as it is received by the client-computer's temporary memory.  This transmission, like a television or radio broadcast, is a performance because there is a playing of the song that is perceived simultaneously with the transmission.").

5. Both Michael Barnett and Christian Jensen were able to stream and view TVP Polonia episodes by accessing TVP's website, www.tvp.pl in the U.S.  Thus SEI's public performance right was infringed.[3]

6. TVP argues that even if the shows were viewed in the U.S. by Barnett and Jensen, and in Canada by Gladkowski, that the Copyright Act requires volitional conduct by the Defendant for direct infringement to have occurred; "A defendant may be held directly liable only if it has engaged in volitional conduct that violates the Act."  *Aereo*, 134 S. Ct. at 2512.

   a. Because "the Supreme Court did not find it necessary to address the 'volitional conduct' requirement in *Aereo* III to hold that both Aereo and its subscribers perform within the meaning of the Transmit Clause," the Court indicated that the requirement that a direct infringer act volitionally has been met in circumstances involving streaming transmission.  *Fox Television Stations, Inc. v. FilmOn X LLC*, 150 F. Supp. 3d 1, 31 (D.D.C. 2015).

7. TVP volitionally and intentionally infringed Plaintiff's copyrights over the 51 infringed episodes of TVP Polonia.

---

[3] While the infringing content was streamed from overseas into the U.S., "[w]ith respect to extraterritoriality, the Court adopts the reasoning in *Automattic Inc. v. Steiner*, from the Northern District of California, which held that copyright infringement that commenced abroad but was completed in the United States was not wholly extraterritorial, and thus the Copyright Act covered the defendant's conduct." (Transcript of July 9, 2015 Motions Hearing at 74:2-25) (citing *Automattic v. Steiner*, 82 F. Supp. 3d 1011, 1028 (N.D. Cal. 2015)).

### D.  Whether SEI Should Be Equitably Estopped From Claiming Infringement

1.  TVP did not carry its burden to prove that SEI should be equitably estopped from claiming that its copyrights were infringed.

2.  "[W]hen a copyright owner engages in intentionally misleading representations concerning his abstention from suit, and the alleged infringer detrimentally relies on the copyright owner's deception, the doctrine of estoppel may bar the copyright owner's claims completely, eliminating all potential remedies." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. at 1966.

3.  "To establish equitable estoppel as a defense to a copyright infringement action, the defendant must prove four conjunctive elements: "(1) the plaintiff must know the facts of the defendant's infringing conduct; (2) the plaintiff must intend that its conduct shall be acted on or must so act that the defendant has a right to believe that it is so intended; (3) the defendant must be ignorant of the true facts; and (4) the defendant must rely on the plaintiff's conduct to its injury." *Tech 7 Sys., Inc. v. Vacation Acquisition, LLC*, 594 F. Supp. 2d 76, 86 (D.D.C. 2009) (citing *Carson v. Dynegy, Inc*., 344 F.3d 446, 453 (5th Cir. 2003)).

4.  Because the court finds that TVP took intentional and volitional action to infringe SEI's copyright, TVP could not be ignorant of the true facts in this dispute, and therefore cannot meet its burden to prove the third and fourth element of estoppel.

    a.  TVP could not have been ignorant that it was infringing SEI's copyright because it (1) granted the exclusive license over TVP Polonia content to SEI and (2) then intentionally infringed SEI's rights.  Nor could TVP have relied on SEI's actions to its own injury, as it was the party intentionally harming SEI.

### E.  Damages

Because the court has determined that TVP infringed SEI's copyrights with regards to 51 TVP Polonia episodes which SEI had registered in the U.S., and the court has wide discretion in determining the amount of damages, the court requests supplementary briefing from the parties on the issue of the appropriate amount of damages it should award.

## III.    CONCLUSION

For the reasons set forth above, and based upon the evidence presented at trial, the court

concludes that Plaintiff Spanski Enterprises has sustained its burden of proof on its copyright

infringement claim, and that judgment must therefore be entered in favor of Plaintiff.

Date:  December 12, 2016


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge