UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
-------------------------------------------------------- X

SPANSKI ENTERPRISES, INC.,

                Plaintiff,

         v.                             **12-cv-957 (TSC)**

TELEWIZJA POLSKA S.A.,

                Defendant.

-------------------------------------------------------- X

### MEMORANDUM OF LAW OF DEFENDANT TELEWIZJA POLSKA S.A. IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN AWARD OF COSTS AND ATTORNEY'S FEES PURSUANT TO THE COPYRIGHT ACT

**DLA PIPER LLP (US)**
Andrew L. Deutsch (*admitted pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501
andrew.deutsch@dlapiper.com

*Counsel for Defendant Telewizja Polska S.A.*

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................................. 1

I     THE COURT SHOULD DENY SEI'S MOTION FOR ATTORNEY'S FEES .............. 1

    A.     The Legal Standard for a Fees Award under the Copyright Act ........................... 1

    B.     TVP's Defenses to SEI's Infringement Claim Were Not Objectively Unreasonable.................................................................................................... 2

       1.     TVP's Extraterritoriality Defense Was Objectively Reasonable.............. 3

       2.     TVP's Volitional Conduct and Estoppel Defenses Were Objectively Reasonable ........................................................... 8

    C.     Other Fogerty Factors ........................................................................................ 9

II     IF THE COURT MAKES ANY FEE AWARD, IT SHOULD SUBSTANTIALLY REDUCE THE AMOUNT DEMANDED BY SEI ...................... 10

    A.     The Standard for An Attorney's Fees Award .................................................... 10

    B.     The Hourly Rates Claimed By SEI Are Excessive and Unreasonable ................ 11

    C.     SEI's Timekeeping Records are Inadequate ...................................................... 18

       1.     SEI's Burden To Show Hours Reasonably Expended............................ 18

       2.     Improper Redactions................................................................................ 20

       3.     Improper Block Billing ............................................................................ 20

       4.     Improperly Vague and General Time Entries.......................................... 21

       5.     Overstaffing and Improper Travel Billing .............................................. 22

CONCLUSION............................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*American Lands Alliance v. Norton*,
    525 F. Supp. 2d 135 (D.D.C. 2007) ........................................................................15

*Assessment Technologies of WI, LLC v. Wiredata, Inc.*,
    361 F.3d 434 (7th Cir. 2004) .................................................................................10

*Automattic Inc. v. Steiner*,
    82 F. Supp. 3d 1011 (N.D. Cal. 2015) ................................................................7, 8

*Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*,
    136 F.3d 794 (D.C. Cir. 1998) ..............................................................................11

*Berke v. Bureau of Prisons*,
    942 F. Supp. 2d 71 (D.D.C. 2013) ........................................................................15

*Blackman v. District of Columbia*,
    397 F. Supp. 2d 12 (D.D.C. 2005) ........................................................................23

*BP Pipelines (North America) Inc. v. C.D. Brown Const., Inc.*,
    473 F. App'x 818 (10th Cir. 2012) ........................................................................21

*Campbell v. District of Columbia*,
    Civ. Act. No. 12-01769 (RC), 2016 WL 4074128 (D.D.C. July 29, 2016)............................22

*Cobell v. Norton*,
    407 F. Supp. 2d 140 (D. D. C. 2005) ..............................................................18, 21

*Copeland v. Marshall*,
    641 F.2d 880 (D.C. Cir. 1980) ..............................................................................11

*Covington v. District of Columbia*,
    57 F.3d 1101 (D.C. Cir. 1995) ..............................................................................11

*Craig v. District of Columbia*,
    197 F. Supp. 3d 268, 279-80 (D.D.C. 2016)........................................................21

*CREW v. U.S. Dep't of Justice*,
    142 F. Supp. 3d 1 (D.D.C. 2015) ..........................................................................15

*Doe v. Rumsfeld*,
    501 F. Supp. 2d 186 (D.D.C. 2007) ......................................................................22

*Eley v. District of Columbia*,
    793 F.3d 97 (D.C. Cir. 2015) ...............................................................................11, 12, 13, 14

*Embassy of Fed. Republic of Nigeria v. Ugwuonye*,
    297 F.R.D. 4 (D.D.C. 2013) ...............................................................................................15

*Fisher v. Friendship Pub. Charter Sch.*,
    880 F. Supp. 2d 149 (D.D.C. 2012) ...................................................................................15

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994) .........................................................................................................1, 2

*Grissom v. The Mills Corp.*,
    549 F.3d 313 (4th Cir. 2008) .............................................................................................11

*Harrison Music Corp. v. Tesfaye*,
    293 F. Supp. 2d 80 (D.D.C. 2003) .....................................................................................11

*Hayes v. D.C. Public Schools*,
    815 F. Supp. 2d 134 (D.D.C. 2011) ...................................................................................15

*Heller v. District of Columbia*,
    832 F. Supp. 2d 32 (D.D.C. 2011) .....................................................................................15

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .....................................................................................................19, 22

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*,
    152 F. Supp. 3d 503 (E.D. Va. 2015) .....................................................................16, 17, 21

*In re Donovan*,
    877 F.2d 982 (D.C. Cir. 1989) ...........................................................................................19

*Joaquin v. Friendship Pub. Charter Sch.*,
    188 F. Supp. 3d 1 (D.D.C. 2016) .......................................................................................15

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    ___ U.S. ___, 136 S. Ct. 1979 (2016) ......................................................................2, 3, 7, 9

*Lahiri v. Universal Music & Video Distrib. Corp.*,
    606 F.3d 1216 (9th Cir. 2010) ...........................................................................................21

*Lee v. Santiago*,
    12 Civ. 2558, 2013 WL 4830951 (S.D.N.Y. Sept. 10, 2013) ............................................18

*McAllister v. District of Columbia*,
    21 F. Supp. 3d 94 (D.D.C. 2014) .......................................................................................15

*Miller v. Holzmann,*
   575 F. Supp. 2d 2 (D.D.C. 2008) ...................................................................15

*Missouri v. Jenkins,*
   491 U.S. 274 (1989)........................................................................................18

*National Association of Concerned Veterans v. Secretary of Defense,*
   675 F.2d 1319 (D.C. Cir. 1982) .....................................................................18

*Overseas Direct Import Co., Ltd. v. Family Dollar Stores Inc.,*
   No. 10 Civ. 4919, 2013 WL 5988937 (S.D.N.Y. Nov. 12, 2013) ...........................8

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.,*
   96 Civ. 4126, 2004 WL 728878 (S.D.N.Y. Apr. 6, 2004)......................................9

*Pleasants v. Ridge,*
   424 F. Supp. 2d 67 (D.D.C. 2006) ................................................................15

*Prunty v. Viviendi,*
   195 F. Supp. 3d 107, 112 (D.D.C. 2016) ...............................................2, 14, 15

*Queen Anne's Conservation Ass'n v. Dep't of State,*
   800 F. Supp. 2d 195 (D.D.C. 2011) ..............................................................15

*Reynolds v. Beneficial Nat. Bank,*
   288 F.3d 277 (7th Cir. 2002) .........................................................................20

*Role Models Am., Inc. v. Brownlee,*
   353 F.3d 962 (D.C. Cir. 2004) ..........................................................11, 20, 21

*Rosado v. City of New York,*
   11 Civ. 4285, 2012 WL 955510 (S.D.N.Y. Mar. 15, 2012) .................................18

*Spanski Enters., Inc. v. Telewizja Polska S.A.,*
   2016 WL 7030970 (D.D.C. Dec. 2, 2016.).............................................7, 8, 10

*Spanski Enters., Inc. v. Telewizja Polska S.A.,*
   2017 WL 598465 (D.D.C. Feb. 14, 2017) .......................................................9

*Sykes v. District of Columbia,*
   870 F. Supp. 2d 86 (D.D.C. 2012) ................................................................15

*Tridico v. District of Columbia,*
   No. 13-cv-0937, 2017 WL 398320 (D.D.C. Jan. 30, 2017).............................20, 21

*Triple Up Ltd. v. Youku Tudou, Inc.,*
   Civ. Act. No. 16-159 (CDM), 2017 WL 354093 (D.D.C. Jan. 24, 2017) ...........................5, 6

*U.S. v. $1,379,879.09 Seized From Bank of America,*
    374 F. App'x. 709 (9th Cir. 2010) .......................................................................................20

*United Slate Tile & Composition v. G & M Roofing,*
    732 F.2d 495 (6th Cir.1984) ...............................................................................................19

*Woodland v. Viacom, Inc.,*
    255 F.R.D. 278 (D.D.C. 2008)............................................................................................15

*ZilYen, Inc. v. Rubber Mfrs. Ass'n,*
    958 F. Supp. 2d 215 (D.D.C. 2013) ...............................................................................2, 3, 4

**STATUTES**

17 U.S.C. § 505 ...............................................................................................................................1

17 U.S.C. § 512(f)............................................................................................................................8

Defendant Telewizja Polska S.A. ("TVP") respectfully submits its memorandum of law in opposition to the motion of plaintiff Spanski Enterprises, Inc. ("SEI") for an award of costs and attorney's fees pursuant to 17 U.S.C. § 505.

## ARGUMENT

## I

## THE COURT SHOULD DENY SEI'S MOTION FOR ATTORNEY'S FEES

### A.       The Legal Standard for a Fees Award under the Copyright Act

The Copyright Act permits a court to "allow the recovery of full costs by or against any party," and to "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The decision to award costs and fees to a prevailing party under § 505 rests within the sound discretion of the district court. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994). For purposes of this motion, TVP acknowledges that SEI is the prevailing party.[1]

The fees provision of the Copyright Act must be viewed against the background of the "American Rule" prevailing in United States courts, under which even a successful party must bear its own litigation costs. *Fogerty*, 510 U.S. at 533 ("[W]e are mindful that Congress legislates against the strong background of the American Rule. Unlike Britain where counsel fees are regularly awarded to the prevailing party, it is the general rule in this country that unless Congress provides otherwise, parties are to bear their own attorney's fees.") Accordingly, under § 505 of the Copyright Act, "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Id.* at 534. A district court "may not 'award[] attorney's fees as a matter of

---

[1]       Nothing in this opposition brief should be construed as limiting TVP's right to contest, on appeal, any factual finding, legal conclusion, or award of damages made by the Court in its opinions, orders, and judgment in this action.

course'; rather, a court must make a more particularized, case-by-case assessment." *Kirtsaeng v. John Wiley & Sons, Inc.*, ___ U.S. ___, 136 S. Ct. 1979, 1985 (2016) (quoting *Fogerty*, 510 U.S. at 533.

While the award of fees to a prevailing party is discretionary, the court's exercise of discretion is not "unconstrained," or "freewheeling," but must be guided by "'sound legal principles." *Kirtsaeng*, 136 S. Ct. at 1986 (citation omitted).  In *Fogerty*, the Supreme Court identified certain factors that a district court should consider in ruling on a fees award: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  510 U.S. at 534, 535 n.19.  Of these factors, the objective reasonableness of the claim or defense is the most important, although not controlling. *Kirtsaeng*, 136 S. Ct. at 1988.

**B.     TVP's Defenses to SEI's Infringement Claim Were Not Objectively Unreasonable**

"A claim under the Copyright Act is objectively unreasonable if it 'is clearly without merit or otherwise patently devoid of legal or factual basis.'  Conversely, a copyright claim is not objectively unreasonable if there is a 'reasonable possibility' that the court would reach a different outcome on the merits of the claim." *Prunty v. Viviendi*, 195 F. Supp. 3d 107, 112 (D.D.C. 2016) (quoting  *ZilYen, Inc. v. Rubber Mfrs. Ass'n*, 958 F. Supp. 2d 215, 218 (D.D.C. 2013) ).  As the U.S. Supreme Court stated in *Kirtsaeng*, a finding of infringement liability does not mean that the defenses to liability were objectively unreasonable:

> But that conflates two different questions: whether a defendant in fact infringed a copyright and whether he made serious arguments in defense of his conduct.  Courts every day see reasonable defenses that ultimately fail (just as they see reasonable claims that come to nothing); in this context, as in any other, they are capable

of distinguishing between those defenses (or claims) and the
objectively unreasonable variety.

136 S. Ct. at 1988.

For example, a litigant in a copyright infringement action in this District has been held to

take an objectively reasonable position where "[t]here was a reasonable possibility that the Court

would reach a different outcome on the merits of the plaintiff's copyright infringement claim in

light of the lack of controlling authority in [the D.C.] Circuit . . . . [T]he fact that the plaintiff

could point to case authority in support of its position, in light of the lack of binding authority,

demonstrates that the plaintiff's copyright infringement claim is not 'clearly without merit' or

'patently devoid of legal or factual basis.'" *ZilYen, Inc.*, 958 F. Supp. 2d at 220 (denying motion

for attorney's fees).

    1.    <u>TVP's Extraterritoriality Defense Was Objectively Reasonable</u>

TVP's Answer raised the defense that the Complaint's single copyright claim failed to

state a cause of action. (Dkt. 7, First Affirmative Defense).  In moving for summary judgment,

TVP fleshed out this defense, asserting that the conduct alleged in the Complaint was

extraterritorial in nature and therefore was not actionable as copyright infringement in U.S.

courts.  TVP showed substantial legal authority that: (1) the Copyright Act does not operate

extraterritorially; (2) acts that would constitute copyright infringement if occurring in the U.S.

are not actionable when they occur outside of the U.S.; (3) a foreign entity that engages in or

authorizes infringing activity solely outside of the U.S. does not violate the Copyright Act; and

(4) no U.S. claim for infringement will lie if the defendant did not commit a predicate act in the

U.S.  Defendant's Memorandum of Points and Authorities In Support of Motion for Summary

Judgment (Dkt. 24-1), at 20-21 and authorities there cited.

The evidence presented by TVP on summary judgment and confirmed at trial closely fit the legal criteria for purely extraterritorial conduct.  All of TVP's conduct that was alleged to be infringing occurred in Poland alone.  TVP uploaded the 51 Episodes at issue to its servers located in Poland.  The programming of those uploads for geo-blocking to the U.S. occurred in Poland.  The Court determined that employees of TVP intentionally removed geo-blocking and thus acted willfully.  However, there is no dispute that even this conduct also occurred exclusively in Poland.  While SEI's lawyers asserted that they were able to play 36 of the 51 Episodes in the United States, they were only able to do so because they sent internet requests to TVP's servers in Poland.   If TVP's conduct were extraterritorial, as TVP argued, then whether or not that conduct was willful or not, SEI's complaint would not state a cause of action under the Copyright Act and would have to be dismissed.  This important point distinguishes this case from those cited by SEI where fees were awarded in instances of willful infringement.  Because TVP presented a defense that its conduct was not actionable copyright infringement at all, the willfulness of its conduct is irrelevant to the objective reasonableness of its defense.

This case presents the same strong indicia of objective reasonableness as those found in *ZilYen*.  There, the court denied attorney's fees to a prevailing defendant because the losing plaintiff was not objectively unreasonable.  Although stating that it continued to find the plaintiff's position "unpersuasive," the district court recognized that the plaintiff had cited authority for its position, that there was no contrary controlling authority in the D.C. Circuit, and that the court's dismissal of the plaintiff's infringement claim relied on an out-of-circuit decision, involving facts that were "not directly analogous" to the plaintiff's claim, and such reliance was not "inevitable."  958 F. Supp. 2d at 221.  Likewise TVP here cited authority for its position; there was and is no contrary controlling authority from the D.C. Circuit; and, as explained below,

the Court's rejection of TVP's extraterritoriality defense relied on a single out-of-circuit district court decision that was not directly analogous, since no claim of infringement was involved there.

A recent decision of Judge Randolph Moss of this District, *Triple Up Ltd. v. Youku Tudou, Inc.*, Civ. Act. No. 16-159 (CDM), 2017 WL 354093 (D.D.C. Jan. 24, 2017) further demonstrates that TVP's extraterritoriality defense was objectively reasonable. In *Triple Up*, the plaintiff owned copyrights to three Chinese-language motion pictures. The defendant ("Youku") was the Chinese equivalent of YouTube, allowing users to upload videos and search and view videos. The defendant employed geo-blocking technology for the videos it uploaded on its system, but intentionally did not implement geo-blocking for user-uploaded videos. *Id.* at *1. The plaintiff sued Youku because its attorneys, while located in the District of Columbia, was able to access the Youku website in China and stream copies of the plaintiff's films. *Id.* at *2. Youku moved to dismiss for lack of personal jurisdiction or failure to state a claim.

The court granted Youku's motion to dismiss, finding that it had no specific jurisdiction over the defendant. The plaintiff raised a "novel argument" based on Youku's geo-blocking capabilities, which is remarkably similar to the extraterritoriality issue here:

> It is undisputed that Youku has the technology to block videos on its website from being viewed in certain geographic locations, and Youku contends that it employs this technology for the subset of videos uploaded to its websites by its own employees. Although the parties dispute whether the videos at issue here are of a kind that Youku would normally geoblock as a matter of its internal policy, there is little question that, in principle, Youku could geoblock *all* its videos from being displayed in the United States, had it the resources and inclination to do so. Thus, Triple Up reasons, because Youku failed to take affirmative steps to prevent the videos from being displayed in the United States, it must have "purposefully transmitted specific broadcasts" to the United States "with full knowledge that they would be viewed" there.

2017 WL 354093, at *7 (citations omitted).

5

The court rejected this argument:

> Triple Up's proposed rule—which equates a *failure to geoblock* with purposeful availment—would effectively mandate geoblocking for any website operator wishing to avoid suit in the United States. To say the least, such a rule would carry significant policy implications reaching beyond the scope of this lawsuit, and, indeed, could limit U.S. residents' access to what is appropriately called the *World* Wide Web. Perhaps, in the future, geoblocking will become sufficiently widespread that a failure to use it will be considered "purposeful" and assigned jurisdictional significance. But Triple Up provides no factual basis for the Court to conclude that this is the case now . . . .
>
> The Court is unaware of any authority suggesting that a *failure to act* might constitute purposeful availment. To the contrary, if personal jurisdiction attached whenever the defendant failed to take available steps to keep its products from reaching the forum, the Supreme Court's "stream of commerce" cases would look quite different. . . . Triple Up's argument here—which, as Youku notes, would "replace the purposeful availment standard with a requirement of purposeful *avoidance*,"—is difficult to square with this result.

*Id.* at *7-8 (emphasis in original; citations omitted).   The court also noted that the plaintiff could not establish that the effects of the alleged infringement were intentionally directed at the United States when the only proven viewers of the films on the Youku site were plaintiff's own lawyers:

> To the contrary, it is difficult to imagine how Youku's posting of the videos could be said to have been "expressly aimed" at the United States, or how it "caused harm" there. After all, Youku's websites are written entirely in Mandarin Chinese. The three films are Taiwanese in origin; appear with Mandarin captions; and, presumably, are themselves in Mandarin . . . . And, far from evidence that Youku's display of the films "achieved a substantial [United States] viewer base" that is "an integral component of [its] business model," there is no allegation that anyone other than Triple Up's attorneys viewed the three films from within the United States at all.

*Id.* at *10.

The facts of *Triple Up,* which led that court to dismiss the complaint, are remarkably similar to the facts of this case.  The allegedly infringing TVP Polonia episodes were on servers located outside of the United States, the episodes were in a foreign language, and they were accessible only through a Polish-language website.  TVP had the capacity to geo-block those episodes but, according to the Court's findings, chose not to do so.  The only persons shown to have viewed the episodes in the US were employed by SEI's attorneys.  It was reasonable for TVP to argue that on these facts, its conduct had insufficient contact with the U.S. to create an actionable copyright infringement claim. If this argument had prevailed at summary judgment or at trial, it would have been a full defense to the entire Complaint.  At worst, TVP's position on extraterritoriality was a "reasonable defense[] that ultimately fail[ed]."  136 S. Ct. at 1988. *Kirtsaeng*, 136 S. Ct. at 1988.

Finally, the single authority cited by the Court in rejecting TVP's extraterritoriality defense does not establish that TVP's position was unreasonable.  The Court relied on dictum in a district court decision from the Northern District of California, *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011 (N.D. Cal. 2015). *See* Transcript of July 9, 2015 Motions Hearing, p. 74;  *Spanski Enters., Inc. v. Telewizja Polska S.A.*, 2016 WL 7030970, at * 13 n. 3 (D.D.C. Dec. 2, 2016.)

Because *Automattic Inc.* was never cited by SEI in its papers opposing TVP's Motion for Summary Judgment, and was not raised by the Court until it dismissed the extraterritoriality defense on summary judgment, TVP was not given an opportunity to show that the decision is distinguishable and should not be applied in this case.  The most important distinction is that in *Automatic*, the plaintiff was not suing for copyright infringement, but under an entirely different provision of the Copyright Act.    Automatic was a California company that had supposedly posted infringing material on servers *in the United States*.  The defendant (located in the UK)

had sent notices demanding takedown of this material under 17 U.S.C. § 512(f), a provision of the Digital Millennium Copyright Act, to Automattic in California.  The U.S. plaintiff claimed these notices were fraudulent and violated the requirements for such notices established in 17 U.S.C. §512(f), and sued the UK resident for damages.  *Automattic* thus did not involve any extraterritorial acts by an accused infringer, nor any claim for copyright infringement.

The legal question in *Automattic* was whether the allegedly false representations that the defendant had made in his takedown notices could be said to occur in the United States.  The *Automattic* court held that "the focus of §512(f) is not where the fraudulent misrepresentation originated, [but] rather where the reliance, wrongful removal, and the resulting injury occurred." *Id.* at 1028.   The decision held that all of these elements of § 512(f) liability occurred in California, where the allegedly infringing posted material was hosted, and where the takedown notice was directed to.  *Id.*

In contrast, the SEI–TVP litigation is an infringement case, not one involving liability under 17 U.S.C. § 512(f).  This Court relied not on *Automattic*'s holding, but on dictum in *Automattic* that the ruling on takedown notices was "consistent" with "reasoning" in other cases where infringement was involved.  *Automattic*, 82 F. Supp. 3d at 1028, cited at *Spanski Enters., Inc.*, 2016 WL 7030970, at * 13 n. 3.  *Automattic* is therefore neither binding nor directly applicable authority in the current case, and, just as in *ZilYen*, the California decision should have no bearing on whether TVP's extraterritoriality defense was objectively unreasonable.

2.      TVP's Volitional Conduct and Estoppel Defenses Were Objectively Reasonable

Another indication that a copyright litigant's position is objectively reasonable is where the claim or defense survives summary judgment.  *See, e.g.*, *Overseas Direct Import Co., Ltd. v. Family Dollar Stores Inc.*, No. 10 Civ. 4919, 2013 WL 5988937, at *2 (S.D.N.Y. Nov. 12, 2013) ("[C]laims that survive summary judgment are unlikely to be objectively unreasonable");

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 96 Civ. 4126, 2004 WL 728878, at *3-4 (S.D.N.Y. Apr. 6, 2004).  That factor also shows that TVP's volitional conduct and estoppel defenses were objectively reasonable, even if not successful.  In denying SEI's motion for summary judgment in part, the Court declined to dismiss TVP's volitional conduct defense and permitted amendment of the complaint to assert a estoppel defense.  It expressly found "numerous disputed issues of fact with respect to whether TVP infringed Spanski's copyrights." (Transcript of July 9, 2015 Motions Hearing at 75-77).  In sum, the objective reasonableness factor of *Fogerty* weighs strongly against an award of attorney's fees to SEI.

### C.      Other *Fogerty* Factors

The remaining *Fogerty* factors that guide the exercise of discretion also point towards a denial of a fee award.  This is not a case where a defendant committed "repeated instances of copyright infringement. " *Kirtsaeng*, 136 S.Ct. at 1989.   While the Court's Opinion awarding statutory damages to SEI  referred to "Defendant's history of infringing Plaintiff's copyright." *Spanski Enters., Inc. v. Telewizja Polska S.A.*, 2017 WL 598465, at *2 (D.D.C. Feb. 14, 2017), this statement has no support in the record.  SEI's 2007 Southern District of New York litigation, which included a claim for copyright infringement, was dismissed *with prejudice* in the 2009 Settlement Agreement between TVP and SEI, without any court ruling on *any* issue.  (PX 11).  Until this litigation, there has never been an adjudication that TVP infringed any copyright claimed by SEI.

Indeed, the Court's reference to a "history of infringing copyright" is not supported by the only citation in the Court's statutory damages opinion, which is to the Court's earlier Amended Memorandum Opinion of Findings of Fact and Conclusion of Law.  *Spanski Enters., Inc.*, 2017 WL 598465, at *2.  The earlier ruling did not find that TVP had previously infringed

SEI's copyrights.  It found only that "[b]eginning in 2007, TVP and SEI engaged in litigation in the Southern District of New York, which resulted in a 2009 Settlement Agreement specifying that SEI is the exclusive licensee of TVP Polonia, including its copyrighted content, in the Territory."  *Spanski Enters., Inc.*, 2016 WL 7030970, at * 2.

Lastly, while compensation and deterrence is a factor to be considered in a fees award, there is no need for additional compensation nor deterrence here.  The Court has already generously compensated SEI and punished TVP by its statutory damages award of $60,000 per episode, and $3,060,000 overall.  The compensatory and deterrent effect of the award is clear: it exceeds the possible economic value of the 51 episodes in dispute;  it is more than four times the quarterly revenue earned by SEI from exploiting *all* episodes of TVP Polonia for the three-month period when the Court found that infringement was occurring; and it is more than 58 times the royalty revenue that TVP earned for the same period. (Declaration of Andrew L. Deutsch (Dkt. 82-2), Ex. 1).  Where sizable statutory damages are awarded (and in particular when they exceed any reasonable estimate of actual damages), the compensatory and deterrent purposes of the Copyright Act are already fully served, and no fees award should be made.  *See Assessment Technologies of WI, LLC v. Wiredata, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004) ("If the case was a toss-up and the prevailing party obtained generous damages, or injunctive relief of substantial monetary value, there is no urgent need to add an award of attorneys' fees.")

The Court should therefore deny SEI's motion for attorney's fees in its entirety.

## II
### IF THE COURT MAKES ANY FEE AWARD, IT SHOULD SUBSTANTIALLY REDUCE THE AMOUNT DEMANDED BY SEI

### A.    The Standard for An Attorney's Fees Award

Where a prevailing party establishes its entitlement to attorney's fees, the district court determines an award by calculating the "lodestar," which is the number of attorney hours

reasonably expended by a reasonable hourly rate. *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). The party seeking fees bears the burden of showing the reasonableness of both the hours claimed and the hourly rate asserted. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004). The movant must present evidence "that supports the hours worked and the rates claimed, and should make a showing that the time spent was reasonably necessary and that the rate is a customary fee in the area." *Harrison Music Corp. v. Tesfaye*, 293 F. Supp. 2d 80, 85 (D.D.C. 2003).

If the Court determines that SEI is entitled to any fee award, that award should be substantially reduced from the amount demanded by SEI. As shown below, SEI and its counsel have failed to substantiate the reasonableness of the hourly rate claimed, have not adequately documented the hours for which SEI seeks compensation, have engaged in a number of unacceptable billing practices, and have overstaffed the case at the trial stage.

**B.     The Hourly Rates Claimed By SEI Are Excessive and Unreasonable**

The starting point of the lodestar analysis is the reasonableness of the hourly rates used in the movant's calculations. A reasonable hourly rate is "that prevailing in the community for similar work." *Copeland v. Marshall*, 641 F.2d 880, 892 (D.C. Cir. 1980). The community is the one where the district court sits. *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008). The movant must show: (1) "the attorneys' billing practices"; (2) "the attorneys' skills, experience, and reputation"; and (3) "the prevailing market rates in the relevant community." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). The burden is on the movant to "produce satisfactory evidence – in addition to the attorney's own affidavits – that his requested rates are in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience and reputation." *Eley v. District of Columbia*, 793 F.3d 97, 101 (D.C. Cir. 2015).

11

SEI seeks an award for fees based on the following hourly rates of Loeb & Loeb attorneys:

- Jonathan Zavin, the lead partner for SEI, billed at a discounted hourly rate that varied from $696-744/hour between 2012 and 2016-17.
- John Piskora, a "Senior Counsel," billed at a discounted hourly rate that varied from $552-547/hour between 2012 and 2016-17.
- Michael Barnett, an associate, billed at a discounted hourly rate that varied between $326 and $489 between 2012-2014.
- Sarah Schacter, an associate, billed at a discounted hourly rate that varied from $404-502 between 2014-17.
- In addition, another "Senior Counsel" was billed at a rate of $510/hour, and three associates were billed at $374-489/hour  in 2015-17.

Declaration of Jonathan Zavin in Support of Plaintiff's Fees Motion (Dkt. 87-2) ("Zavin Dec.") at ¶¶ 7-8.

However, SEI has failed to present any evidence that these hourly rates have been accepted as reasonable in copyright fee applications in cases in the District of Columbia, which is the "relevant community" here.  Instead, it relies primarily on Mr. Zavin's say-so in his affidavit, a fee award made to Mr. Zavin in federal court in Los Angeles (Ex. 8), and an award made to Loeb & Loeb paralegals in a case in New York City.  (Ex. 15).  None of this is sufficient evidence to meet the burden for showing reasonably hourly rates: a party must present evidence "in addition to the attorney's own affidavits," *Eley*, 793 F.3d at 100; and rates approved in one case in New York and one case in Los Angeles are not probative of prevailing market rates in Washington, D.C. and the surrounding legal community.

SEI cites two external sources for its claim that its claimed hourly rates reflect "prevailing market rates in the relevant community" for copyright infringement work.  The first source is the Legal Service Index-adjusted *Laffey* Matrix ("LSI *Laffey* Matrix") for complex federal litigation. (Zavin Decl. Ex. 6).

The burden is on SEI to show that the LSI *Laffey* Index should be applied in making a copyright fees award, *Eley*, 793 F.3d at 104-05, and it has failed to carry the burden.  It cites no decision in which the *LSI* Laffey Matrix has been used to calculate a copyright lodestar, and as noted below, such use has been expressly rejected by another judge in this District as a basis for awarding fees in a copyright case.  Indeed, plaintiff is so devoid in supporting authority that it has put its cursory reasons for using this rate schedule into a footnote.  (Zavin Decl. ¶ 7 n. 1). Even in that footnote, it does not cite any case that used any of those reasons as justification for applying the LSI *Laffey* Index.

Moreover, SEI does not show that this case is "complex federal litigation" of the type for which the LSI *Laffey* Matrix was designed.  It is in fact an ordinary copyright case, and SEI's mention of the Foreign Sovereign Immunities Act ("FSIA") is misleading.  Although TVP is an instrumentality of the Republic of Poland engaged in commercial activity, and therefore entitled to a non-jury trial in this District, TVP's FSIA status was never a litigated issue in this case.  SEI voluntarily filed its complaint in this Court (Dkt. No. 1), with one count, "Infringement of Copyrights," and did not demand a jury trial.  TVP did not raise any defense based on its status as a Polish state instrumentality.  The litigated issues raised in the parties' cross-motions for summary judgment and at trial were exclusively copyright issues.

The other external source on which SEI relies for its rates claim is a summary of billing rates reports compiled by the National Law Journal ("NLJ") from 2012-2015.  (Zavin Decl., Ex. 7).  However, the NLJ Report also fails to show the prevailing market rates in the Washington D.C. community for copyright litigation work.  The NLJ Report presents the high, low, and median billing rates for partners and associates in a host of large national firms for *all types* of legal work performed by for those firms.  There is no indication that each of the firms in the NLJ

Report (even those that are headquartered in Washington) handle copyright infringement cases. Thus, the NLJ report provides no evidence of the rates in this community for "similar work" to that performed by Loeb & Loeb here, i.e., prosecution of a claim for copyright infringement.

SEI inexplicably fails to cite the most relevant precedent, a recent decision from Judge Amit Mehta of this Court, *Prunty v. Vivendi*, 195 F. Supp. 3d 107 (D.D.C. 2016), which expressly rejected use of the LSI *Laffey* Matrix and the NLJ Report as a basis for calculating the lodestar in a copyright infringement case.  In *Prunty*, Jenner & Block sought to justify its rates in a copyright case by reference to the NLJ Report.  The court found, however, that the NLJ Report "is of limited evidentiary value for purposes of establishing the prevailing market rates in Washington, D.C., for civil rights and copyright litigation" because it "does not . . . distinguish billing rates for partners and associates in terms of years of experience, the type of work performed, or the law firm's location."  *Id.* at 114.  Accordingly, the NLJ Report, "standing alone, does not provide the kind of evidence necessary to allow the court to evaluate the reasonableness of Jenner & Block's rates in this case." *Id.*  at 114-15.

Because the movant provided no other evidence of reasonable rates, the *Prunty* court looked to the application of the *Laffey* Matrix, which had been used in other fee cases in the District.  It noted that there were two *Laffey* matrices: the LSI *Laffey* Matrix, which is adjusted on a nationwide basis, and a different rate matrix prepared by the United States Attorney's Office for the District of Columbia (the "USAO *Laffey* Matrix"), which is adjusted for specific inflationary factors in the Washington, D.C. area.  *Id.* at 115.  *Prunty* noted that in *Eley,* the D.C. Circuit had rejected use of the LSI *Laffey* Matrix as a basis for determining prevailing market rates for Individuals with Disabilities Act federal litigation.  *Id.* (citing *Eley*. 793 F.3d at 104).  *Prunty* held that "absent actual evidence" provided by the movant that the copyright case before

it qualified as a complex federal case, the USAO *Laffey* Matrix should be the "appropriate benchmark by which to measure the market rate in this case." *Prunty*, 195 F. Supp. 3d at 116.[2] *Prunty* thus reduced the hourly rate of each timekeeper to his or her applicable USAO *Laffey* Matrix rate.  SEI, like the fees movant in *Prunty*, has failed to provide "actual evidence" that this case is a complex federal case.  The Court should therefore reject application of the LSI *Laffey* Matrix here and judge the reasonableness of the rates SEI claims under the USAO *Laffey* Matrix.

Loeb & Loeb's claimed rates (even as discounted) are unreasonable because they substantially exceed the USAO *Laffey* Matrix rates.  The disparity between USAO *Laffey* Matrix rates for the years 2012-2017 (found at https://www.justice.gov/usao-dc/civil-division)  that apply to the experience level of the Loeb & Loeb attorneys and paralegals (as shown in Zavin Decl. ¶¶ 7-8), and the hourly rates claimed by SEI, is clear:

---

[2]      This ruling is consistent with the practice in the wide majority of decisions in this District, which rely on the USAO *Laffey* Matrix, not the LSI *Laffey* Matrix, as the "benchmark for reasonable fees"  in the District of Columbia. *Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008) (quoting *Pleasants v. Ridge*, 424 F. Supp. 2d 67, 71 n.2 (D.D.C. 2006)).  *See, e.g., Joaquin v. Friendship Pub. Charter Sch.*, 188 F. Supp. 3d 1 (D.D.C. 2016); *CREW v. U.S. Dep't of Justice*, 142 F. Supp. 3d 1 (D.D.C. 2015); *McAllister v. District of Columbia*, 21 F. Supp. 3d 94 (D.D.C. 2014); *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 297 F.R.D. 4, 15 (D.D.C. 2013); *Berke v. Bureau of Prisons*, 942 F. Supp. 2d 71, 77 (D.D.C. 2013); *Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149, 154-55 (D.D.C. 2012); *Sykes v. District of Columbia*, 870 F. Supp. 2d 86, 93-96 (D.D.C. 2012); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 40-49 (D.D.C. 2011); *Hayes v. D.C. Public Schools*, 815 F. Supp. 2d 134, 142-43 (D.D.C. 2011); *Queen Anne's Conservation Ass'n v. Dep't of State*, 800 F. Supp. 2d 195, 200-01 (D.D.C. 2011); *Woodland v. Viacom, Inc.*, 255 F.R.D. 278, 279-80 (D.D.C. 2008); *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 148-50 (D.D.C. 2007).

| Atty. Name | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | | SEI Claimed Rate (Zavin Decl. ¶¶ 7-8) |
|---|---|---|---|---|---|---|---|---|
| Zavin (30+ years) | 495 | 510 | 520 | 568 | 581 | 581 | | 696-744 |
| Piskora (11+ years) | 435 | 450 | 460 | 465 | 465 | 516 | | 552-547 |
| Barnett (2-4 years) | 240 | 250 | 255 | | | | | 326-489 |
| Schacter (3-6 years) | | | 300 | 325 | 332 | 332 | | |
| Nolan (8-10 years) | | | | | 386 | | | 510 |
| Chen (4-7 years) | | | | | 339 | | | 489 |
| Seagall (1-3 years) | | | | | | 291 | | 374 |
| Ernst (1-3 years) | | | | | | 291 | | 374 |
| Paralegals | | 145 | 150 | 150 | 154 | 157 | | 157-329 |

SEI's claimed rates are also unreasonable under the recent decision in *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 152 F. Supp. 3d 503 (E.D. Va. 2015). In that case, attorneys for a prevailing defendant sought fees for work during 2013-2015 at hourly rates similar to those claimed by Loeb and Loeb here: partner hourly rates between $512 and $832; associate hourly rates between $292 and 396; and paralegal hourly rates between $152 and $272. To support these rates, the movant presented the national survey of the American Intellectual Property Law Association Report of Economic Survey for 2014 ("AIPLA Report"), which

"reports. . . data collected from the prior calendar year about the hourly billing rates and associated expenses for intellectual property work."  152 F. Supp. 3d at 519.

*Humphreys* rejected the AIPLA Report's *national* survey as not representative of rates for similar work in the relevant local community.  It did, however, accept the AIPLA Report's data for "median hourly rates for attorneys in Washington, D.C. – a closer, albeit loose fit," *id.*, and held that there was no reason "to countenance an award based on higher rates than these."  *Id.* The AIPLA Washington, D.C. median lawyer rates for intellectual property work for 2014, which the *Humphreys* court used, were: (i) $485/hour for partners, (ii) $473/hour for of counsel, and (iii) $350/hour for associates.  *Id.*, see AIPLA 2014 Report, at 25, 36, 54.[3]  *Humphreys* also noted that even the AIPLA Report rates were excessive for the Eastern District of Virginia, finding that "[i]n cases similar in nature, difficulty, and complexity to the present case, courts in this district have recognized rates up to $420/hour for partners, $275/hour for associates, and $120/hour for litigation support staff."  *Id.*  The court thus made a 25% reduction in the fee demand to "account for the excessive hourly rates."  *Id.* at 520.

The hourly billing rates claimed by Loeb & Loeb substantially exceed the prevailing market rates for similar work in Washington, D.C. as recognized in *Prunty* and *Humphreys*, further proving that those rates are not reasonable.  As an example, Mr. Zavin's claimed rates over the 2012-2017 period are between 28% and 40% higher than the corresponding rates set in the USAO *Laffey* Matrix, and between 43% and 53% higher than the Washington D.C. median rates for intellectual property partners shown in the AIPLA Reports.

If the Court awards any fees at all to SEI, it should account for the difference between the Loeb and Loeb rates and prevailing market rates by recalculating the hourly rate for each

---

[3]    The most recent AIPLA Report, for 2015, shows the same median billing rates for intellectual property lawyers and paralegals in private law firms in Washington D.C.   Deutsch Declaration, Ex. 1.

qualified professional used in the lodestar, using the AIPLA Report rates for Washington, D.C. intellectual property lawyers approved in *Humphreys*,  or the USAO *Laffey* Matrix approved in *Prunty*.

The Court should also not award any fees for the time of Loeb & Loeb's technology litigation support personnel (Josh Gorruso) or docketing clerk (Timothy Cummins), or for time of the firm's paralegals that was clerical in nature, such as assembling documents and exhibits or registration of copyrights.  These charges are the normal administrative overhead of any functioning law firm engaged in copyright work or litigation and are not properly recovered in a fee application.  In addition, paralegal time is only compensated where the services are legal in nature, *Cobell v. Norton,* 407 F. Supp. 2d 140, 156 (D. D. C. 2005), such as "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence," *Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10 (1989).  Similarly, where an attorney has performed administrative tasks necessary to the action, such as registering copyrights, copying, organizing documents, or other work that can be done by a paralegal staff, the time should only be compensated at paralegal rates.  *Lee v. Santiago*, 12 Civ. 2558, 2013 WL 4830951, at *4 (S.D.N.Y. Sept. 10, 2013); *Rosado v. City of New York*, 11 Civ. 4285, 2012 WL 955510, at *5 (S.D.N.Y. Mar. 15, 2012).

### C.    SEI's Timekeeping Records are Inadequate

1.    <u>SEI's Burden To Show Hours Reasonably Expended</u>

The second step in lodestar analysis is to determine the appropriate number of attorney hours that are to be multiplied by approved reasonable hourly rates.  "Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney."  *National Association of*

*Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1327 (D.C. Cir. 1982).  This requirement of meticulous and accurate timekeeping is "particularly apt" when fees are to be paid from the funds of a national government.  *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989).  TVP is an entity owned and funded by the Government of the Republic of Poland, and any fees awarded against TVP would be paid in part from Polish public funds.  (Trial Testimony of Jacek Terlicki, Tr. 281:2-11).  If the Court makes any fee award here, it should be particularly watchful of any inappropriate or inaccurate billing records submitted by SEI.

The documentation supporting the hours expended by the fee movant "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended."  *In re Donovan*, 877 F.2d at 994 (quoting *United Slate Tile & Composition v. G & M Roofing,* 732 F.2d 495, 502 n. 2 (6th Cir.1984)).  Courts in this District and elsewhere have been particularly critical of fee applications where the supporting description of legal services is vague (e.g., descriptions such as "legal issues," "conference re all aspects" or "call re status,") or block billing.  *See In re Donovan*, 877 F.2d at 995.  The courts must also be vigilant for law firms overstaffing cases and must prune "excessive, redundant, or otherwise unnecessary hours" from fee applications. *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983).

The time records offered by SEI in support of its fees motion fail to meet these high standards of proof for a fees award.  Redactions, block billing, and vague time descriptions make it impossible to determine whether hours were reasonably expended.  There is evidence of overstaffing, particularly at the trial stage.  And certain costs are billed contrary to established precedent in this District.

2.    <u>Improper Redactions</u>

To begin with, the attorney invoices submitted as Exhibit 3 to the Declaration of Jonathan Zavin contain numerous redactions of time entries and disbursements that make it impossible to determine whether the hours listed there were actually and reasonably expended and expenditures were reasonably incurred.   Invoices submitted in support of a request for attorneys' fees "should be redacted *only* to the extent absolutely necessary to protect information covered by the attorney-client privilege or the work-product doctrine." *U.S. v. $1,379,879.09 Seized From Bank of America,* 374 F. App'x. 709, 711 (9th Cir. 2010) (emphasis in original); *Reynolds v. Beneficial Nat. Bank,* 288 F.3d 277, 286 (7th Cir. 2002).   Given the fact that this litigation is at an end, except for an attorneys' fees motion and an appeal, there can be no legitimate basis for redacting these invoices and thereby impeding TVP and the Court's ability to review the reasonableness of the time billed.   Certainly, SEI has not shown that the redactions were necessary.   Accordingly, the Court should not include in its award any time entry where there has been a redaction of any part of the work performed.

3.    <u>Improper Block Billing</u>

Second, the Loeb & Loeb invoices suffer from extensive "block billing", which "involves lumping multiple tasks into a single time entry, which can 'mak[e] it impossible to evaluate their reasonableness.'" *Tridico v. District of Columbia*, No. 13-cv-0937, 2017 WL 398320, at *7 (D.D.C. Jan. 30, 2017) (quoting *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004).   Of the Loeb & Loeb lawyers, only one junior associate, Sarah Schacter, frequently recorded a separate amount of time for each task billed in a day.   The senior lawyer on the case, Jonathan Zavin, almost always block-billed and the next-senior lawyer, John Piskora, only occasionally billed on a task-by-task basis.   Conservatively, it appears that 80% of the Loeb & Loeb entries are block-billed.

20

"Even if tasks are adequately described, there is simply no way for the Court to assess whether the time spent on each of those tasks was reasonable when they are lumped together. *See Role Models Am., Inc.*, 353 F.3d at 970 (court must 'determine with a high degree of certainty that such hours were actually and reasonably expended')" *Tridico*, 2017 WL 398320, at *7. The appropriate remedy for extensive block billing is a significant reduction of the overall amount of fees otherwise allowed. *See, e.g.*, *Role Models Am., Inc.*, 353 F.3d at 971-973 (reducing fees by 50% for block billing and other inadequate documentation); *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222 (9th Cir. 2010) (affirming reduction of block-billed hours by 30%, and citing report that block billing may increase time over actual time worked by 10-30%); *BP Pipelines* (*North America) Inc. v. C.D. Brown Const., Inc.*, 473 F. App'x 818, 835 (10th Cir. 2012) (approving 40% reduction of block-billed hours). Given the extensiveness of Loeb & Loeb's block billing practices, there is no way for the Court to determine whether the time allocated to each of the tasks in an attorney or paralegal's block-billed day was reasonable.  The Court should therefore reduce the hours otherwise allowable in any lodestar calculation by at least 40% to account for Loeb & Loeb's block billing.

4.   Improperly Vague and General Time Entries

Third, many of the Loeb & Loeb time entries are vague and general, of a nature that prior courts in this District have found inadequate and requiring a reduction in the number of hours to be included in the lodestar calculation. See *Cobell v. Norton,* 407 F. Supp. 2d at 158 (Entries such as "research read cases; searched Westlaw"; "prepare for trial", "further trial preparation and document review" s are "so vaguely generic that the Court cannot determine with certainty whether the activities they purport to describe were necessary and reasonable"); *Craig v. District of Columbia*, 197 F. Supp. 3d 268, 279-80  (D.D.C. 2016)  ("preparing for trial" inadequate description); *Humphreys*, 152 F. Supp. 3d at 520 n. 28 ("Revise discovery requests," "Revise

21

answer," "Fact research," "update internal logs, dockets, etc.," "review interrogatory answers," "review docket activity" "consider complaint," and "further consider complaint.")  Mr. Zavin's entries particularly lack detail, as they often state only "EMAIL WITH" or "CONFERENCE WITH" a specified person.   See Ex. 3 (Dkt. 87-5).   The Court should make an appropriate reduction of any fee award for this failure to record time in detail.

5.      Overstaffing and Improper Travel Billing

Fourth, Loeb & Loeb had *three* attorneys (Jonathan Zavin, John Piskora and Sarah Schachter) present at each day of the 2016 trial, and the bills for each lawyer are included within the fee award.   This overstaffing was unnecessary to prosecute the case.   TVP prepared and defended the trial, including direct examination and cross-examination of experts, using only one lawyer, Andrew Deutsch, and one paralegal over the five days of trial.   Declaration of Andrew L. Deutsch ¶ 2.   The preparation and trial of SEI's case could likewise have easily been handled by Mr. Zavin, an experienced and able attorney, with a paralegal.   *Id.* ¶ 4.   Redundant and duplicative work should be excluded from a fee award.   *Hensley*, 461 U.S. at 434.   Where using a team of attorneys results in overstaffing a trial, "double compensation should not be granted" and "a court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case."  *Campbell v. District of Columbia*, Civ. Act. No. 12-01769 (RC), 2016 WL 4074128, at *7 (D.D.C. July 29, 2016).   The Court should therefore exclude from any award the hours attributed in the Loeb and Loeb invoices to Mr. Piskora for his trial preparation and trial attendance.   Ms. Schacter's hourly rate should be reduced to the reasonable rate for a paralegal ($154/hour under the 2016 USAO *Laffey* Matrix).

Finally, Loeb & Loeb is charging at full rates for travel time. Ex. 3, p. 79, 80, 140, 180, 206, 214, 225, 226, 228.   However, in this District travel time is only compensated at half the attorney's reasonable hourly rates. *Doe v. Rumsfeld,* 501 F. Supp. 2d 186, 193 (D.D.C. 2007);

*Blackman v. District of Columbia,* 397 F. Supp. 2d 12, 15 (D.D.C. 2005).   The Court should reduce the hours properly attributable to travel by 50% fee award accordingly.

## CONCLUSION

For the reasons stated above, the Court should deny SEI's motion for attorney's fees in its entirety.   If the Court chooses to make any award, it should calculate the lodestar by (1) reducing the hourly rates of Loeb & Loeb attorneys and paralegals to either the rates shown in the applicable USAO *Laffey* Index or the AIPLA Report; (2) excluding non-lawyer hours except for paralegals engaged in clearly legal tasks and reduce any time billed by attorneys for work that could be done by a paralegal to paralegal rates; (3) excluding any hours for time entries that contain redactions; (4) excluding the hours of John Piskora for trial preparation, travel to, and attendance at trial, and reducing Sarah Schecter's hourly rate for that period to the 2016 USAO *Laffey* Matrix rate for paralegals; (5) reducing hours for time otherwise properly billed to travel by 50%; and (6) correcting for Loeb & Loeb's block billing and vague entries by an overall reduction of the remaining allowable hours by at least 40%.

Dated: New York, NY
      March 17, 2017

**DLA PIPER LLP (US)**

By: /s/ Andrew L. Deutsch
Andrew L. Deutsch (*admitted pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501
andrew.deutsch@dlapiper.com

*Counsel for Defendant Telewizja Polska S.A*