UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SPANSKI ENTERPRISES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 12-cv-957 (TSC) |
| TELEWIZJA POLSKA S.A., | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On December 2, 2016, after a trial, this court found that Defendant Telewizja Polska S.A. (TVP) "volitionally and intentionally infringed" Plaintiff Spanski Enterprises Inc. (SEI)'s exclusive copyrights over 51 television episodes by making those episodes available for display in the United States. (Am. Mem. Op. at 20, ECF No. 80). On February 14, 2017, the court ordered TVP to pay damages to SEI in the amount of $60,000 per episode, for a total of $3,060,000. (Mem. Op., ECF No. 85). On February 24, 2017, SEI filed a motion for attorney's fees and costs, pursuant to 17 U.S.C. § 505 and Fed. R. Civ. P. 54(d)(2). (Pl. Mot., ECF No. 87). Having considered the parties' filings and relevant precedent, and for the reasons that follow, TVP is hereby ORDERED to pay SEI reasonable attorney's fees in a final amount to be determined.

**II. JUDICIAL STANDARD**

Attorney's fees are not generally recoverable unless provided for by statute or enforceable contract. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 257

1

(1975). Typically, the party seeking fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The decision whether to award attorney's fees is within the discretion of the district court. *See Brayton v. Office of the U.S. Trade Representative,* 641 F.3d 521, 524 (D.C. Cir. 2011) (reviewing refusal to award fees for abuse of discretion); *Hensley,* 461 U.S. at 437 (noting that district court has discretion in making determinations regarding fee awards).

### III. DISCUSSION

Section 505 of the Copyright Act states that "[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . . [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Thus, to justify an award of attorney's fees under the Copyright Act, a court must determine that (1) the party to whom the fees are awarded qualifies as a "prevailing party," and (2) an award of fees is warranted based on the totality of the circumstances surrounding the particular case, in light of a number of factors. *See Fogerty v. Fantasy,* 510 U.S. 517, 534 n.19 (specifying non-exhaustive list of factors to be considered as part of the relevant circumstances in deciding whether to award fees). Provided that attorney's fees are warranted, the court must also settle on a reasonable amount to award. 17 U.S.C. § 505.

*1. Prevailing Party*

As an initial matter, SEI qualifies as the "prevailing party" within the meaning of section 505. The phrase "prevailing party" is a legal term of art. *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). A party "cannot be deemed to have prevailed, for purposes of fee-shifting statutes[,] . . . unless there has been an enforceable 'alteration of the legal relationship of the parties.'" *Id.* at 622. This specialized

meaning notwithstanding, courts have consistently recognized that a judgment on the merits in favor of one party establishes prevailing party status. *See, e.g.*, *id.* at 604 ("[E]nforceable judgments on the merits . . . create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees.") (citing *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 792–93 (1989)). The parties do not contest SEI's status as the prevailing party, and this court has issued a judgment on the merits in favor of SEI. Thus, SEI qualifies as a prevailing party within the meaning of Section 505. *See id.*

### 2. *Totality of the Circumstances*

As "there is no precise rule or formula for making fee determinations under § 505," a court's decision to award fees under that section requires an exercise of "equitable discretion" that accounts for the circumstances of each particular case on its own terms. *Fogerty*, 510 U.S. at 534 & n.19; *see also Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988–89 (2016). Courts generally consider a number of factors in exercising this discretion, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 156 (3d. Cir. 1986); *see also Prunty v. Vivendi,* 195 F. Supp. 3d 107, 111–12 (D.D.C. 2016); *Fogerty*, 510 U.S. at 534 n.19. Of these factors, the Supreme Court recently clarified that objective reasonableness carries "significant weight" in determining whether to award fees. *Kirtsaeng,* 136 S. Ct. at 1989. Nevertheless, the Court also noted that notwithstanding the significance of objective reasonableness, that factor is not necessarily controlling, as district courts retain discretion to "take into account a range of considerations beyond the reasonableness of litigating positions." *Id.* at 1988. Thus, "a court may order fee-shifting because of a party's litigation

misconduct, whatever the reasonableness of his claims or defenses." *Id.* at 1988–89. In any event, all enumerated factors and other circumstances must be considered in a light "faithful to the purposes of the Copyright Act." *ZilYen, Inc. v. Rubber Mfrs. Ass'n,* 958 F. Supp. 2d 215, 218 (D.D.C. 2013) (quoting *Fogerty,* 510 U.S. at 534 n.19).

SEI argues that it is entitled to attorney's fees for a number of reasons. It contends that: (1) TVP's infringement of its copyright was "motivated by bad faith" and accompanied by an "express intent to 'break' the party's agreement"; (2) TVP's defenses—that the access to the allegedly infringing episodes was the result of technological error, that any infringement lacked a volitional element, and that witnesses contradicting these propositions lacked credibility—were objectively unreasonable; and (3) TVP's actions in "deleting and manipulating files to cover up" the infringement, including during litigation, constituted litigation misconduct justifying a fee award. (Pl. Mot. at 8–12, ECF No. 87). TVP responds that: (1) its defenses—including the extraterritoriality of the conduct alleged to constitute infringement, lack of intent and volition, and estoppel—were merely unsuccessful, not unreasonable (Def. Opp. to Mot. at 3–9, ECF No. 92); (2) this is not a case involving repeated instances of copyright infringement; and (3) the court's award of statutory damages suffices to address any concerns of compensation or deterrence relating to the Copyright Act. (Def. Opp. to Mot. at 10, ECF No. 92).

A. <u>Frivolousness and Objective Reasonableness</u>

This court concludes that the defenses presented at trial were neither frivolous nor objectively unreasonable. Claims under the Copyright Act are "objectively unreasonable if '[they are] clearly without merit or otherwise patently devoid of legal or factual basis,'" and are "not objectively unreasonable if there is a 'reasonable possibility' that the court would reach a different outcome on the merits of the claim." *Prunty,* 195 F. Supp. 3d at 112 (quoting *Zilyen,*

958 F. Supp. 2d at 220). Although the court decided in favor of SEI, TVP's defenses were not so clearly devoid of legal or factual basis as to render unreasonable any possibility that a court would decide for TVP. Unlike the claims and defenses at issue in other cases in which courts have found frivolousness or objective unreasonableness,[1] both parties here presented serious defenses and arguments for this court to adjudicate. The mere fact that the court determined that SEI carried its burden of proof and that TVP's defenses were insufficiently meritorious does not establish unreasonableness, and the court is not aware of any other basis upon which to rest such a conclusion. *See Kirtsaeng,* 136 S. Ct. at 1988 (noting distinction between questions of whether a defendant infringed a copyright and whether a defendant made serious arguments in defense of his conduct, and separating the issue of liability from the issue of reasonableness). Nevertheless, the court does not find objective reasonableness to be the controlling factor in this case.

B. Litigation Misconduct, Compensation, and Deterrence

While defense counsel conducted himself with the utmost propriety and ethical probity throughout the course of this litigation, this court is nevertheless of the view that TVP engaged in egregious litigation misconduct. Although the objective reasonableness or unreasonableness of a party's litigation position is unquestionably important in considering the appropriateness of a fee award, the Supreme Court expressly noted in *Kirtsaeng* that fees can be awarded even where parties adopt reasonable positions before the court. *See* 136 S. Ct. at 1988–89. The Court particularly emphasized a scenario in which the seriousness of a party's litigation misconduct

---

[1] *Cf., e.g.*, *Newborn v. Yahoo! Inc.,* 473 F. Supp. 2d 1, 5–6 (D.D.C. 2006) (finding frivolousness and objective unreasonableness where a party asserted claims composed of vague and contradictory statements wholly lacking in factual support); *Pannonia Farms, Inc. v. Re/Max Intern., Inc.*, 407 F. Supp. 2d 41, 46 (D.D.C. 2005) (finding objective unreasonableness where party pursued intellectual property claims after binding decision established that party had no ownership interests over which to file suit).

5

could form the basis for a fee award, irrespective of the reasonableness of proffered claims or defenses. *Id.* The facts of this case—which revealed TVP's attempts to delete evidence of their infringing activity—fit that scenario. Moreover, the nature of TVP's misconduct also dovetails with "the need in particular circumstances to advance considerations of . . . deterrence," insofar as it undermines the predictable operation and effectiveness of the Copyright Act's protections. *See Prunty*, 195 F. Supp. 3d at 111.

First, based on the evidence produced at trial, this court found that TVP had not only willfully and intentionally infringed upon SEI's copyright, but also engaged in conduct intended to conceal that infringement, including the intentional manipulation of evidence collected for submission at trial. (Am. Mem. Op. at 15–16, ECF No. 80). In particular, vigorous and painstaking cross-examination by Plaintiff's counsel revealed how, on August 31, 2012, a TVP employee or TVP employees went into TVP's distribution system, removed the formatted videos that are the subject of this litigation from distribution, changed the formatting settings on those videos so that they appeared to comply with the requirements of SEI's copyrights, republished those videos without the offending formatting, and then created a screenshot of the altered formats to submit to this court as evidence that no copyright infringement had occurred. (*See* Am. Mem. Op. at 15–16, ECF No. 80). This misconduct involves at least three distinct and independently inappropriate actions: (1) the intentional deletion of relevant evidence; (2) the falsification of relevant evidence; and (3) the submission of such evidence to the court, alongside a representation that the falsified screenshots were in fact genuine. (*See* Am. Mem. Op. at 15–16, ECF No. 80). These actions are particularly problematic given that their combined effect is to impede and misdirect the course of the judicial process.

Second, the type of litigation misconduct in which TVP engaged decreases the reliability of legal recourse to enforce the Copyright Act's provisions, thereby frustrating the goals of the Act. As the Supreme Court has noted, "copyright law ultimately serves the purpose of enriching the public through access to creative works," and "achieves that end by striking a balance between . . . encouraging and rewarding authors' creations while also enabling others to build on that work." *Kirtsaeng,* 136 S. Ct. at 1986 (quoting *Fogerty*, 510 U.S. at 527). Recourse to the legal system and the judicial process is a central component of maintaining this complex balance, *see, e.g.*, *Fogerty,* 510 U.S. at 527 (noting the role of litigation involving meritorious claims and defenses in ensuring "that the boundaries of copyright law [are] demarcated as clearly as possible"), and it is therefore critical for the judicial process to operate fairly, accurately, and reliably to enforce the protections and serve the purposes of the Copyright Act. Accordingly, conduct that goes beyond infringement to undermine the judicial process itself—such as submission of intentionally falsified evidence—necessarily interferes, on a fundamental level, with the purposes of the Copyright Act. An award of fees to Plaintiff is thus appropriate not only because TVP's conduct in this case was egregious, but also because of the need to protect the integrity of the copyright regime by deterring future misconduct.

Lastly, an award of fees is also warranted as a means of compensating SEI for its efforts in uncovering the nature and seriousness of TVP's misconduct. The assiduousness of SEI's attorneys in wading through the case's technological complexities to find evidence of TVP's misconduct is commendable, and their efforts in this regard would have been unnecessary but for TVP's attempt to manipulate the evidence presented to this court.

C. Further Deterrence-Related Considerations

Deterrence of future violations represents an important consideration in this case, not only because of TVP's litigation misconduct, but also because of the willful nature of TVP's copyright infringement. *See Cable/Home Comm. Corp. v. Network Prods., Inc.,* 902 F.2d 829, 851 (11th Cir. 1990) (quoting *Int'l Korwin Corp. v. Kowalczyk,* 855 F.2d 375, 383 (7th Cir. 1988)) ("[W]hen the infringement is willful, 'deterrence of future violations is a legitimate consideration' because 'defendants must not be able to sneer in the face of copyright owners and copyright laws.'"); *see also Harrison Music Corp. v. Tesfaye,* 293 F. Supp. 2d 80, 84 (D.D.C. 2003) (awarding fees in part because defendant "deliberately refused to comply with copyright laws"). As a general matter, the court considers it to be of the utmost importance for companies that volitionally infringe copyrights to receive a penalty calculated to dissuade present or future infringers and to further the national interest in maintaining "a legal system that encourages and rewards those who prevent copyright infringement." *Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.,* 2009 WL 3423848 (E.D. Va. Oct. 16, 2009). Furthermore, as concerns specific deterrence, this court notes that the present dispute merely represents the latest skirmish—and the first adjudication—in a longer pattern of controversy between these parties and over these works. (*See* Am. Mem. Op. at 2–3, ECF No. 80). Accordingly, an award of fees is appropriate to deter conduct that could lead to future copyright disputes between the parties.[2]

---

[2] A separate analysis of the parties' motivations provides little additional benefit to the foregoing discussion. Nevertheless, it appears that: (1) SEI had no improper motivation in filing this suit, given their interest in preserving their right to exclusive distribution; and (2) TVP's willful violation of SEI's copyright and its scheme to cover up that violation speaks ill of its motivations before and during the proceedings before this court. Both of these facts support a fee award in this case. *Cf. ZilYen,* 958 F. Supp. 2d at 221.

8

*3. The Attorney's Fee Award*

Where a federal statute provides for fee-shifting, the D.C. Circuit employs a three-part analysis to assess the reasonableness of a fee request. *See Eley v. District of Columbia,* 793 F.3d 97, 100 (D.C. Cir. 2015). Pursuant to that analysis, a court must: (1) determine the number of hours reasonably expended in litigation; (2) set the reasonable hourly rate; and (3) use multipliers as warranted. *Salazar ex rel. Salazar v. District of Columbia,* 809 F.3d 58, 61 (D.C. Cir. 2015). With regard to the proposed hourly rate, courts are instructed to consider three sub-elements of which the movant must provide evidence: "(1) the attorney['s] billing practices; (2) the attorney['s] skills, experience, and reputation; and (3) the prevailing market rates in the relevant community." *Makray v. Perez,* 159 F. Supp. 3d 25, 30 (D.D.C. 2016) (quoting *Salazar,* 809 F.3d at 62). In general, the party seeking fees "bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying reasonableness of the rates." *Eley,* 793 F.3d at 100 (quoting *Covington v. Dist. of Columbia,* 57 F.3d 1101, 1107–08 (D.C. Cir. 1995)). As part of that burden, a fee applicant is required to "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Eley,* 793 F.3d at 100 (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984)). Additionally, "there is a strong presumption that the fee yielded by the now-ubiquitous 'lodestar' method, which bases fees on the prevailing market rates in the relevant community, is reasonable." *West v. Potter,* 717 F.3d 1030, 1034 (D.C. Cir. 2013).

Plaintiff's counsel, Loeb & Loeb, seeks $845,519.13 in attorney's fees and $58,987.51 in costs for the period of representation between January 3, 2012 and January 31, 2017. (*See* Pl.

9

Mot., Decl. of Jonathan Zavin, ECF No. 87-2 ("Zavin Decl."), at 1 ¶ 2, Ex. 3 at 3). According to the Zavin Declaration, that figure includes reductions afforded to SEI, and other write-offs for unrecoverable costs or fees. (Zavin Decl. at 3, ¶ 4–5). Counsel's invoices between 2012 and 2017 reflect fees incurred from eleven attorneys. Four of these attorneys make up the "Core Litigation Team": Jonathan Zavin (partner), John Piskora (senior counsel), Michael Barnett (associate), and Sarah Schacter (associate). The remaining seven "Supporting Attorneys" worked on the case intermittently between 2012 and 2017, and include Thomas Nolan (associate/senior counsel), C. Linna Chen (associate), Sasha Seagal (associate), and Joel Ernst (associate). The invoices also reflect billing for additional staff, including Antoinette Pepper (senior paralegal and day-to-day), Christopher Jensen (junior paralegal), Maureen Cloonan (junior paralegal), Roxanne McRae (junior paralegal), and Josh Gorruso (litigation technology support manager). (Zavin Decl. at 4–10, ¶ 7–9). Plaintiff's counsel contends that the fees are reasonable insofar as they: (1) represent the actual fees and rates charged to SEI; (2) are based on the experience level of the attorneys and other staff; and (3) are consistent with the hourly rates of other firms, as measured according to the National Law Journal's publication of such rates or the Legal Service Index-adjusted (LSI) *Laffey* Matrix. (*See* Pl. Mot., ECF No. 87).

TVP contests the reasonableness of the requested fees on a number of grounds. TVP first asserts that Plaintiff's counsel's hourly rates are unreasonable in light of prevailing rates in copyright cases in the District of Columbia. TVP contends that Plaintiff's counsel's rates should be measured against the *Laffey* Matrix calculated by the United States Attorney's Office for the District of Columbia or the rates included in the American Intellectual Property Law Association Report of the Economic Survey for 2014 ("AIPLA Report"). TVP further contends that reductions are appropriate because Plaintiff's counsel engaged in block billing, recorded vague

10

and general time entries, and improperly billed for travel time, all of which allegedly inflate or prevent assessment of the hours reasonably spent working on the case. (*See* Def. Opp. to Mot. at 11–22, ECF No. 92).

    A.  <u>Reasonableness of Hourly Rate</u>

The court is persuaded that Plaintiff has met its initial burden to demonstrate that counsel's suggested hourly rate is "in line with those prevailing in the community for similar services" and otherwise presumptively reasonable. *Eley,* 793 F.3d at 100 (quoting *Blum,* 465 U.S. at 895 n.11). Counsel for SEI provided copies of—or citations to—documents attesting to the skill, reputation, and experience of Plaintiff's counsel, such as: (1) articles and biographical information supporting the reputation of the firm and the experience and skill of the individual attorneys involved, both in general and regarding intellectual property matters in particular; and (2) memorandum opinions from other district courts recording their assessment of the skill and experience demonstrated and possessed by counsel and staff. These confirmed that Plaintiff's counsel are among the most skilled and experienced attorneys handling intellectual property matters nationwide. SEI also submitted (1) detailed invoices dating back to 2012, indicating tasks performed and time billed for each firm professional on particular dates, including billing reductions, and (2) individualized comparisons between rates billed per professional—based on level of experience—and the appropriate entry on the LSI *Laffey* matrix. These documents indicated that, after applicable reductions, counsel's rates were, with few exceptions, at or below the average hourly rate indicated by the LSI *Laffey* matrix. (*See* Zavin Decl. at 5–9). In particular, counsel for SEI billed for the time of Mr. Zavin—an attorney with well over 20 years of experience handling intellectual property matters—at a rate consistently below that set by the

LSI *Laffey* matrix for attorneys with commensurate experience. *Id.* at 5. All of these factors support the overall reasonableness of Plaintiff's attorneys' hourly rates.

TVP's arguments to the contrary are unpersuasive. TVP primarily contends that Plaintiff's counsel has failed to adduce evidence that this case qualifies as "complex federal litigation." (Def. Opp. to Mot. at 14–15, ECF No. 92). Citing *Prunty*, TVP argues that this court should apply the USAO *Laffey* matrix over the LSI *Laffey* matrix, since, as in *Prunty*, caution is warranted because there is insufficient evidence to support use of the more generous LSI *Laffey* matrix. *Prunty,* 195 F. Supp. 3d at 114–116 (applying USAO *Laffey* matrix where moving party failed to submit any significant evidence of prevailing market rates or complexity in the case). However, the court finds that this case qualifies as the sort of "complex federal litigation" for which it is appropriate to use *Laffey* matrices as indicators of prevailing market rates in Washington, D.C. *Salazar,* 809 F.3d at 64; *see also Prunty,* 195 F. Supp. 3d at 115. The court agrees with Plaintiff's counsel that this case involved a high degree of complexity, requiring an understanding of the operation of highly specialized distribution and geo-blocking technologies, international discovery—including deposing witnesses who did not speak English—and multiple filings, all over a period of years. Having thoroughly reviewed the evidence, claims, and defenses during the pendency of these proceedings, the court is convinced of this case's complexity, and Plaintiffs have met their burden with regard to that issue and have justified use of the LSI *Laffey* matrix.

TVP argues that the 2014 AIPLA Report's survey of billing rates in Washington, D.C. represents a more practice-area specific, and thus more accurate, comparator for determination of prevailing market rates. (Def. Opp. to Mot. at 16–18, ECF No. 92). TVP cites to *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.,* 152 F. Supp. 3d 503 (E.D. Va. 2015) to support

this proposition. While the court notes that AIPLA has the benefit of providing rates that are practice-area specific, it also notes that TVP cites no case in this district that has accepted the AIPLA report's rates, and that even *Humphreys* found the AIPLA Report's rates to be a "loose" fit for the Washington D.C. market. *Humphreys,* 152 F. Supp. 3d at 519. Furthermore, the court is of the view that the fees requested by Plaintiff's counsel would be reasonable even if measured against the rates in the AIPLA report. TVP's comparison between Plaintiff's counsel's proposed rates and the median rates for intellectual property partners fails to take into account that Plaintiff's counsel possesses a reputation and a level of skill and experience that go beyond that of the median partner. Thus, this court does not find it unreasonable that Plaintiff's counsel's proposed rates would fall—as they do—in the upper quartile of the rates surveyed in the AIPLA report, and notes that their reduced rates remain below the most expensive 10% of intellectual property partners as recorded in that report. (*See* ECF No. 92-2).

Thus, in light of (1) the technological and logistical complexity of the case, (2) the evidence of counsel's billing practices, nationwide reputation, and high level of experience and skill in handling intellectual property matters, and (3) the generally favorable comparison between the reduced rates charged by counsel and the rates indicated in the applicable categories of the LSI *Laffey* matrix, this court concludes that the hourly rates charged by Plaintiff's counsel were reasonable. *See Covington v. Dist. of Columbia,* 57 F.3d 1101, 1108 (D.C. Cir. 1995) (describing burden and three-part analysis for assessing reasonableness of hourly rate).

On the other hand, the rates charged for paralegals and other support staff tended to be significantly above the rates indicated in the LSI *Laffey* matrix. (Zavin Decl. at 4–10, ¶ 7–9). Indeed, according to that matrix, the billing rates for many of the Loeb & Loeb paralegals appear to rival rates for qualified attorneys in their first three years of practice. The court finds the

discrepancy between the rates listed in the LSI *Laffey* matrix and the billing rates of these paralegals to be insufficiently justified, and thus orders a reduction of the paralegals' hourly rates to match the paralegal rates listed in the LSI *Laffey* matrix during the time periods in which the compensable tasks were performed.

B. <u>Number of Hours Reasonably Expended</u>

Plaintiff carries "the burden of establishing the reasonableness of its fee request," and must provide documentation "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models America, Inc. v. Brownlee,* 353 F.3d 962, 970 (D.C. Cir. 2004) (per curiam) (quoting *In re Olson,* 884 F.2d 1415, 1428 (D.C. Cir. 1989)). TVP noted a number of billing practices that it considers unreasonable, including block billing, allegedly vague descriptions of tasks, and overbilling for travel. (*See* Def. Opp. to Mot. at 11–22, ECF No. 92).

Block billing describes the process of "lumping multiple tasks into a single time entry," which complicates assessment of the reasonableness of the time expended in proportion to the nature of the task performed. *Tridico v. District of Columbia,* 235 F. Supp. 3d 100, 109 (D.D.C. 2017). Block billing is not forbidden, but where it prevents the court from assessing the reasonableness of time expended, it has caused courts to reduce fee awards. *See id* (collecting cases). Similarly, time entries that are overly vague, especially when combined with block billing, also make it difficult to assess the reasonableness of time expended in relation to particular tasks. *See Bennett v. Castro,* 74 F. Supp. 3d 382, 405 (D.D.C. 2014). Nevertheless, the question is one of degree—"[a] fee application need not present 'the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Nat'l Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1327

(1982) (per curiam) (quoting *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1980)). The court concludes that Plaintiff's counsel's detailed and contemporaneous time records provide sufficient information to assess the particular tasks performed and the reasonableness of the time expended on those tasks, as well as on the case as a whole. Although some entries may have been vaguer or more crowded with tasks than others, the court is not of the view that these entries were so numerous and/or unintelligible as to preclude the court's ability to assess the reasonableness of the time expended. *Cf. Tridico,* 235 F. Supp. 3d at 109. Thus, the court declines to reduce the fee award on the basis of block billing or allegedly vague time entries.

Regarding travel time, the court acknowledges Plaintiff's counsel's representation in its Reply to Opposition to Motion that travel time was at certain times written off and at other times billed at a half-time rate. (Pl. Rep. at 13 n.3, ECF No. 93). However, the court considers recovery of fees incurred for travel time, when that time is not spent performing legal work, to be unreasonable and, accordingly, unrecoverable. Therefore, the court will modify the fee award to exclude charges for all travel time during which legal work was not performed. The court concludes that the amount of hours expended during the course of this litigation was otherwise reasonable.

Finally, the court considers any request for reimbursement of charges for alcoholic beverages to be unreasonable, and will also modify the award to exclude such charges.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for an award of costs and attorney's fees pursuant to the Copyright Act is GRANTED in part and DENIED in part. The court finds that an award of fees and costs is warranted, but concludes that certain modifications to the lodestar amount are in order. To facilitate calculation of the final award amount, the court orders that

counsel for SEI shall update and resubmit a version of its billing records incorporating these modifications. Specifically, the modified billing records should: (1) reduce the hourly rates of all paralegals to match the rates listed in the LSI *Laffey* matrix during the time periods in which the compensable tasks were performed; (2) exclude charges for all travel time during which legal work was not performed; and (3) exclude any request for reimbursement of funds expended on alcoholic beverages, to the extent that any such requests have been included in the proposed award amount.

Date: September 30, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge